PERELES, Respondent, vs. GROSS and another, imp., Appellants.

*October 24—November 14, 1905.*

*Boundaries: Location: Evidence: Plats: Measurements and figures: Resurvey: Use and occupation: Court and jury: Former judgment: Res judicata: Estoppel: Ejectment.*

1. Where the original location of the boundary lines of a lot is in dispute, if there is absolutely no direct evidence as to the place of physical location on the ground of the line or point in question or of any intervening point, the courses and distances declared in the plat as connecting it with the starting point (the

actual location of which can be ascertained) must control, at least in the absence of other physical facts inconsistent with such result.

2. When, in subdividing a line or space, the surveyor declares on the plat the dimensions which he has given to each of the subdivisions except the last, and there leaves an irregular space without designating its dimensions, he will be presumed to have thrown the remainder, much or little, into that irregular and unmeasured portion.

3. The measurement, upon a plat drawn to a small scale, of a short line whose length is not marked in figures, is entitled to little weight as against the declaration of the surveyor, shown by figures marked on the plat, as to the length at which he in fact laid out other lines.

4. In resurveying a tract of land according to a former plat or survey, the surveyor's only function or right is to relocate, upon the best evidence obtainable, the corners and lines at the places where they were originally located on the ground by the first surveyor.

5. The question whether, by the original survey, street lines shown on a plat coincided with the extended lines of other streets, so as to make a resurvey based on such coincidence evidence of the boundary lines of lots, is *held*, upon the evidence, to have been a question for the jury.

6. Practical location, or use and occupation, in order to be evidentiary of the original location of lines, must at least be open to the inference that it commenced with some reference to the original survey lines or markings.

7. In a later action involving a different subject matter, the judgment in a former action between the same parties is conclusive only as to matters actually adjudicated therein, and not upon questions which might have been considered but in fact were not.

8. Where the exact location of a strip of land, occupied by a viaduct, with reference to the boundaries of the lots of the respective parties was material in an action, and the court's finding thereon could properly, under the pleadings, have been based only on a trial of the question involving some sort of evidentiary proof, the express determination of such location by the court is conclusive as to that question upon all the parties in subsequent litigation between them, whatever the subject or the form of such later litigation.

9. The purchaser at a foreclosure sale, who knew when he took his deed that it covered only the land described in the mortgage,.

cannot, in ejectment against grantees of the mortgagor, recover an adjoining strip on the ground that the mortgagor had, by representations to the mortgagees, estopped himself to deny that such strip was covered by the mortgage, especially where defendants are not shown to be chargeable with notice of any such equity.

10. In ejectment the plaintiff must stand on his legal title.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action of ejectment to recover 34.36 feet of land claimed by the appellant to be the northeast half of lot 43, and an adjoining 9.36 feet of lot 42, according to Hubbard & Pearson's addition to Milwaukee. That addition was platted and surveyed as early as 1838, and the plat duly recorded. It does not appear that there is any ambiguity or uncertainty as to the interior portion of the plat, but the confusion, if any, exists in relation to the fringe of so-called "water lots," lying between North Water street and Milwaukee river. A copy of the plat, so far as material, is attached. The surveyor declares the location of stone at the southeast corner of block 13 as the starting point from which other surveys are to be made. Such stone has never been found, but a new one has been located, the correctness of which is apparently not in dispute. There is no evidence that any of the original markings on the ground of the various water lots have ever been discovered, and there is no evidence of ancient occupation, by buildings or otherwise, earlier than about 1865 or 1866, although it does appear that there was travel from North Water street to the river, in or near the street lying immediately to the north of the terminus of Kinzie or Marshall street, on the plat, for some years prior to 1866. One main point of contention is the extent of frontage of water lot 46, the most southwesterly of the entire fringe of lots. On the original plat a narrow frontage is shown, which by scale measures about 5.83 feet, but no length in figures for that line is marked upon the original plat. In 1876 the city engineer undertook to lo-

Hubbard & Pearsons Addition

Plat

e of Water Lots indicate actual distances

cate on the ground these water lots and the intervening streets
to the river, and finding confusion seems to have practically
disregarded all distances indicated on the original plat, and
gave to the various lots and streets the dimensions marked in
the figures below the lot lines in North Water street (the di-
mension figures above the lot lines being those of the original
plat). Upon such survey, and others, it is found that the dis-
tance from the northeast line of lot 46 to the point E exceeds
the total of the figures on the original plat by 37.96 feet, sub-
ject to the question whether the north end of Johnson (Astor)
street should be sixty-six or sixty-two feet. If sixty-six feet,.
the surplusage would be four feet less. The defendants con-
tend that these various lots and streets should be given the di-
mensions accorded them upon the original plat, and that the
resulting surplusage of from thirty-five to forty feet should all
be cast upon lot 46, whose frontage was left unmarked. The
trial court seems to have rejected this contention on the the-
ory that there was apparent from the plat an intention that
the ends of streets running at right angles from North Water
street to the river were to correspond with the north and
south streets in the body of the plat, and this result is nearly
accomplished by the so-called city survey of 1876, while some
measure of distortion would result from defendants' conten-
tion. Hence he held as matter of law that the city survey
was correct, which left all the lots southwest of the extension
of Van Buren street to correspond with their dimensions upon
the original plat, and left lot 46 with 5.83 feet frontage, and
included the ground in controversy within the plaintiff's paper
title.

Another ground of defense was estoppel of the plaintiff by
judgment. It appeared that some time about 1882 the ex-
tension of Van Buren, or Henry, street was vacated, a fact
which seems to have been entirely overlooked by the city,
which in 1893 proceeded to build an elevated viaduct from
the intersection of Van Buren and Brady streets across the

river, following nearly the center of the extension of that street northwest of North Water street, according to the city survey. Thereupon the owners of lot 41 and, by virtue of the vacation, of the southwest half of Van Buren street commenced suit against the city for damages, in which they recovered upon a holding that the vacation of the street was valid and that they were the owners to the center of Van Buren street, and upon the further holding that the whole of the viaduct was within the limits of their title, and they were adjudged damages for the taking of the forty-six feet occupied by the viaduct. The south line of the viaduct was 286.75 feet from the southwest corner of lot 46, marked on the accompanying plat as point A, and the viaduct forty-six feet wide. To connect plaintiff with this adjudication it was made to appear that prior to said judgment the plaintiff, together with others, as trustees of the Shape estate, had obtained from defendants and their predecessors in title a mortgage upon lots 41 and 42, the northeast half of lot 43, and the one-half of the vacated street northeast of lot 41. During the litigation with the city the mortgage was foreclosed. After judgment of foreclosure, but before sale, the mortgagees having demanded payment of the damages to them, and other claims being made, upon an application of the city all parties interested, including these defendants and this plaintiff and his associate trustees, were interpleaded. The mortgagees set up their foreclosure judgment and demanded payment to them on the ground that their mortgage covered the premises upon which the viaduct was built. Before decision in that proceeding the foreclosure sale was held, and the property sold according to its lot descriptions as contained in the mortgage to this plaintiff, personally, in separate parcels, and he appeared in and became a party to the proceeding for the distribution of damages. The court finally sustained the contention of the mortgagees, and found that the viaduct was entirely upon the mortgaged premises, and that the southerly line thereof was

six feet southerly of the northerly line of lot 41, and accordingly the money, with certain deductions for expenses, was paid over to the mortgagees to apply on their deficiency judgment. The trial court in the present action held this created no estoppel against the plaintiff, and directed verdict in his favor for the recovery of the possession of the premises described in the complaint as commencing 130.83 feet northeast of the stone monument at the southeast corner of lot 46, and extending northeasterly along North Water street 34.36 feet, and running by perpendicular lines back to the river. From this judgment the defendants appeal.

For the appellants there was a brief by *Timlin & Glicksman,* and oral argument by *W. H. Timlin.*

For the respondent there was a brief by *Turner, Hunter, Pease & Turner,* of counsel, and oral argument by *C. F. Hunter.*

DODGE, J. 1. The first question is purely one of fact, and is, Where did the original surveyor in 1838 locate on the ground the northeasterly and southwesterly lines of water lot 43 ? for the boundary of plaintiff's ownership, according to his deed, is midway between these two lot lines. Of course, the most direct evidence would be the very stakes or monuments which that surveyor set as marking the boundaries of this lot, or the testimony of eye-witnesses, who saw the lines actually run upon the ground. Next in directness would be occupation commenced by persons having knowledge as to the place of original location or at a time when the original stakes were still in place. *Racine v. J. I. Case P. Co.* 56 Wis. 539, 14 N. W. 599; *Koenigs v. Jung,* 73 Wis. 178, 180, 40 N. W. 801; *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177. Failing both of these, the next evidence in conclusiveness is the courses and distances declared in the plat as connecting the spots in question with some other point, the actual location of which can be ascertained. When this method is necessary, numer-

ous possibilities of error and confusion arise, for measurements of distance and running of courses involve care and accuracy of human action and adjustment of the instruments used; hence the possibility, if not probability, that the instruments used and the care and observation exercised by the original surveyor were not identical with those applied in a subsequent survey. From the frequency of such difficulties have grown up numerous rules for resolving and adjusting discrepancies, based upon experience as to the manner in which mistakes and inaccuracies most frequently arise. Where, however, there is absolutely no direct evidence as to the place of physical location on the ground of the line or point in question or of any intervening point, the declaration of the plat that it is so many feet in a given direction from the starting point must control, at least in absence of other physical facts inconsistent with such result. On the plat in question the original locations of points A and E seem to be undisputed. The distance and direction of each intervening lot and street boundary from the point E is stated, while the distance from the point A is not stated, because the frontage of water lot 46 is not declared. At this point it is as well to refer to the curious dignity ascribed to this unmarked space by the city surveyors, upon whose so-called resurveys the plaintiff's case largely rests. By measuring this line upon the original plat, which is on a scale of 200 feet to the inch, they conclude that this space is 5.83 feet, although the scale of the map is so small that the very width of the lines as drawn thereon is a foot or more. To the thus ascertained length of this line they accord such conclusiveness as to warrant repudiation of the declaration of the surveyor as to the length at which he in fact laid out many of the other lot lines, changing some of them nearly one third, viz., from 50 to 65.51 feet. This is complete perversion of the rule, founded on both reason and authority, that when, in subdividing a line or space, the surveyor declares the dimensions which he has given to each of

the subdivisions except the last, and there leaves an irregular space without designating its dimensions, he will be presumed to have thrown the remainder, much or little, into that irregular and unmeasured portion. *Pereles v. Magoon,* 78 Wis. 27, 31, 46 N. W. 1047; *Baldwin v. Shannon,* 43 N. J. Law, 596. That results from the well-established rule in treating plats that there is more probability of error in measuring a long line than a short one. Besides this, the attempted picture of a tract of land by way of a small plat has but little significance against the stated angles, courses, and distances which the surveyor declares to have controlled his survey of the ground.

Much of confusion as to location of lines in this locality results from a so-called resurvey made by the city surveyor in 1878. In resurveying a tract of land according to a former plat or survey, the surveyor's only function or right is to relocate, upon the best evidence obtainable, the corners and lines at the same places where originally located by the first surveyor on the ground. Any departure from such purpose and effort is unprofessional, and, so far as any effect is claimed for it, unlawful. To fix lines variant from the originals and according merely to his notion of a desirable arrangement of lots and streets leads naturally to confusion of claims among lotowners, and, when done by a city surveyor as a basis for occupation of land for streets, is attempted confiscation. The evidence shows that in the city survey nothing was found on the ground to show where any of the subdivisions between the points A and E were originally located; also, that the surveyor proceeded, while retaining the same number of lots, to give those lots such arbitrary width as he saw fit, with the purpose and result of making the lines of the streets on the northeast side of Water street coincide with the extended lines of the north and south streets. This resurvey is therefore wholly valueless, and not even evidentiary, unless it be found as a fact that such coincidence of street lines did in fact exist

in the original survey. The trial court apparently directed verdict for plaintiff on the ground that such fact was established, and established conclusively and without dispute, else it could not properly be withdrawn from the jury. This ruling sharply presents the error assigned under this branch of the case. The trial court based its conclusion, in a written opinion, upon the picture presented by the original plat, whereby approximate coincidence of street lines apparently exists, but this was only one piece of evidence. Opposed to it were several other circumstances. There was the declared fact that the streets to the river, at right angles with Water street, were surveyed ninety-six feet wide, but the lines of such a street could not exactly correspond with the lines of a sixty-six-foot street intersected by Water street at an angle of forty-five degrees, for such lines would be less than 93.5 feet apart on such hypotenuse. Again, as already stated, the aggregate width certified to have been given the lots on the ground rendered such location of the streets impossible, though it would not wholly remove the short streets to the river from connection with the north and south streets so but that passage across Water street from the latter to the former would be practicable. Thus it clearly appears that the absolute coincidence of the street lines was a disputed question. Respondents' counsel present, as further support for the court's ruling, use and occupation according to such street lines. Practical location or use and occupation, in order to be evidentiary of original locations, must be at least open to the inference that it commenced with some reference to original survey lines or markings. *Racine v. J. I. Case P. Co.* 56 Wis. 539, 14 N. W. 599; *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177. All occupation and use subsequent to 1878, whether by the city or by owners, is clearly referable to the deluding resurvey of that date. Prior to that time no travel from Water street northwestward to the river is shown on any of the streets except Marshall street. That, however, is not

located with any exactness, and, until the buildings hereafter mentioned, was over unoccupied commons. No occupation by property owners is shown until "late in the sixties," when a mill building was erected on lot 14, whose foundation now corresponds closely with the northeast line of that lot as claimed by plaintiff. At about the same time a small residence was built on lot 13. That was located near what the plaintiff claims to be the northeast line of the lot and remote from the street line, but would apparently have approximated the latter line, as claimed by defendants. At about the same date as the mill above mentioned a house was built by the owner of lot 41, still in existence, the whole of which is northerly of the lines of that lot and extends some twenty feet into Van Buren street, as same is claimed by plaintiff. The significance of these several structures depends on whether they were apparently attempted to be built according to lot lines, and whether there is probability that their builders had any better means of knowledge then, some twenty-five or thirty years after the plat, than exists now as to the true location of those lines. There is no evidence of the existence of either marks or memory, and the lapse of time had been such as to throw doubt upon their persistence on the immediate banks of the river. All this situation thus presented a very obvious case of conflicting inferences, not proper to be withdrawn from the jury. We must therefore conclude that error was committed in directing the verdict.

2. If, upon new trial, the jury should reach the same conclusion as did the court in this, there would still remain the question of plaintiff's estoppel to contend for such a location of the premises described in his deed as to include the strip in dispute. In a somewhat complicated litigation about the distribution of a fund which had become substituted for a forty-six-foot strip of land, claimed by the plaintiff's grantors to be part of their mortgaged premises, the court expressly found that the southerly line of that strip was six feet south of the

northerly line of lot 41. The location of that southerly line of the viaduct 286.75 feet northeast of the point A was entirely certain and undisputed in that case as in this. The exact location of that strip with reference to the lines of ownership of the various other parties and their successors in title was material, because a part of the relief sought and granted by the judgment consisted in barring them from all further claim in the land for which the money deposited by the city was in fact payment. No question of privity needs discussion, for all the parties to the instant action were parties to that. However, the present action involves a different subject matter than the former; hence that judgment is conclusive only as to matters actually adjudicated therein, and not upon questions which might have been considered but in fact were not. *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589. The somewhat vexed inquiry whether a question, in order to be concluded as a thing adjudged upon a different cause of action, must have been so the subject of contention that the court did in fact actively and consciously consider and decide it, or whether it suffices that the question was so present to the former litigation that the judgment necessarily affirmed or negatived, although the court may in fact have merely assumed the existence of the fact in absence of contention over it, we need not attempt to consider or decide. Typical cases in support of the latter view are *Van Valkenburgh v. Milwaukee,* 43 Wis. 574, 580; *Last Chance M. Co. v. Tyler M. Co.* 157 U. S. 683, 15 Sup. Ct. 733, while *Cromwell v. County of Sac,* 94 U. S. 351, 356, gives some support to the former contention. Text-book discussion will be found in 1 Freem. Judgments, § 330; 1 Van Fleet, Former Adj. ch. 8. We deem it clear that, even within the more limited version of the rule of *res adjudicata,* the question of the relative location of the northerly line of lot 41 and the southerly line of the viaduct was, litigated and decided. We have already pointed out that it

was material to the relief sought and granted and that the
court declared its express determination of it.   That finding
could properly have been based only on a trial of the question
involving some form of evidentiary proof, for no mutuality of
allegation or admission established the fact.   True, plaintiff
and his associates alleged it, but the city did not admit it.
Its pleading merely conceded that its forty-six-foot strip was
all southerly of the center of the street, which was forty-eight
feet northerly of the lot line, and the pleadings of most of the
other parties went no further.   This finding we deem con-
clusive proof that the court did receive proof of some kind
and judicially consider and determine upon the subject which,
by the pleadings, was submitted to it.   That being so, its de-
termination is conclusive upon all the parties whenever the
same question comes up between them, whatever may be the
subject or the form of the later litigation.   *Van Valkenburgh
v. Milwaukee, supra; Wentworth v. Racine Co.* 99 Wis. 26,
74 N. W. 551; *Grunert v. Spalding, supra; Hart v. Moulton,*
104 Wis. 349, 80 N. W. 599; *Last Chance M. Co. v. Tyler
M. Co., supra.*   This judgment, therefore, conclusively es-
tablished, as against all parties to this action, that the north-
east line of lot 41 is 292.75 feet from the known point A, and
that any construction of the plat which would make that line
coincide with the intersection of the extended west line of
Van Buren street with the northerly line of Water street is
incorrect.   Starting with this fact, there is no evidence to con-
tradict the declaration of the original plat as to width of lots
41, 42, and 43; any discrepancy in the apparent but unde-
clared frontage of lot 46 not serving as any contradiction.
*Pereles v. Magoon,* 78 Wis. 27, 46 N. W. 1047.   Hence upon
the evidence as it stands in the record, plaintiff's southerly
line is 161.75 feet northeast from the monument at A, thus
excluding from his ownership 30.90 feet of the land claimed,
and including 3.44 feet thereof.

3. A claim is made that defendants are estopped to deny

plaintiff's title to the 34.36 feet described in the complaint, because the agent for their grantor, while negotiating for the loan by the trustees of the Shape estate, stated to plaintiff, as trustee, that the premises proposed to be mortgaged included a building which confessedly extended over the land in dispute. There is no evidence that even the trustees were misled into supposing that the description of land which was finally written into the mortgage covered this land to the southward. They could hardly have believed that and also believed that it covered the buildings lying northerly of lot 41, which were in the said statement also declared to be offered for mortgage. Whatever may have been the effect of such statement on the mortgagees, however, there is no evidence that plaintiff was misled at the time of his purchase at foreclosure sale into supposing that the land he bid for, or the deed he received, covered anything except the land actually described therein. He then knew all about the claim that lot 41 commenced six feet north of the south line of the viaduct. He had joined in a petition asserting that fact. He knew the dimensions of lots 41, 42, and 43. He knew when he took his deed of lot 42 and half of lot 43 that such deed could convey only what it described. If, by reason of the statements to them, the trustees had acquired the equitable right to hold thirty feet of land outside of that described in their mortgage, they had taken no step to do so, and they had not conveyed any such right or land to plaintiff. He must stand on his legal title in an action of ejectment, and he has shown no legal title passing to him beyond the description in his deed. Besides this, there is nothing to show that the defendants, though grantees of Leopold Gross, are chargeable with any equities that may have existed against him or any notice, at the time of their purchase, that the mortgagees claimed beyond the limits fixed in their recorded mortgage.

*By the Court.*—Judgment reversed, and cause remanded for new trial.