MILLER, Appellant, vs. LAVELLE, Respondent.

*January 9—January 29, 1907.*

*Boundaries: Plats: Physical location of lot lines: Natural monuments: Courses and distances.*

1. In an action of ejectment involving lots in the plat of an addition to a city no field-notes of the survey of the addition were produced. It appeared that the east and west lines of the lots, as

shown on the plat, were not closed on the south, but there appeared upon the plat a short distance south of the south ends of the east and west lines an irregular line, below which were a series of pen marks such as are commonly used by surveyors and plat makers to indicate elevation, and it also appeared from the evidence that south of the south ends of the east and west lines as indicated on the plat there was in fact an abrupt descent. *Held*, that the irregular line at the crest of the descent was the south boundary line of the. lots in question, and not a line drawn between the east and west lines at points distant from the north boundary the number of feet called for by the figures marked upon the plat.

2. Where there is a natural monument or what is equivalent to a natural monument there cannot be said to be absolutely no direct evidence as to the place of physical location on the ground of the line or point in question.

3. While under the rule: In ascertaining the true location of streets, lots, and blocks according to a plat, regard is to be had (1) to the natural monuments referred to therein, and (2) to the artificial monuments placed by the surveyor to mark lines or boundaries, before resorting to the courses and distances marked in the plat or survey,—courses and distances come third in order of certainty, it is not intended to lay down a rule of law that courses and distances shall, in all cases, overcome every other species of evidence with reference to location except natural or artificial monuments.

APPEAL from a judgment of the circuit court for Chippewa ·county: A. J. VINJE, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the defendant in an action of ejectment growing out of a disputed boundary. The southern boundary of the Western addition to the city of Chippewa Falls is the common boundary between the parties. The defendant owns lots 3 and 4 of block 17 of that addition, which, by the original and recorded plats, abut on said south boundary, wherever said south boundary may be located. The case was tried by the court without a jury and the court found:

"That lots 3 and 4, block 17, of the Western addition to the city of Chippewa Falls are bounded by the intersection of the plane of the plateau with the plane of the slope of the

hill at the time of the survey and the straight lines shown on the plat produced, if necessary, to the intersection of such planes."

*W. H. Stafford,* for the appellant.

*D. Buchanan, Jr.,* for the respondent.

TIMLIN, J. This location of the boundary lines of lots 3 and 4, block 17, determined the case against the plaintiff and judgment was given accordingly. It appears without substantial dispute that the platted lands embraced within said Western addition are in fact on the level of a plateau, and that to the south from about the east end of Governor street to the west line of the plat, and perhaps further, the plateau comes to an end by a somewhat abrupt descent to the flats of the Chippewa river. Some of the witnesses estimate that the angle of descent is about thirty degrees—presumably counting from the surface of the plateau extended. The contour of this descent on the surface of the plateau is such that, if a line were traced along the edge of the plateau, called by the witnesses "the brow of the hill," an irregularly curved or meander line would be produced which would cut or intersect the lines of the lots and streets of said addition, not at the distances indicated by the lengths of such lines on the plat, but beyond or south of such lengths at distances varying from eleven to twenty-four feet. The contour line of the edge of the plateau would, however, close the survey of the Western addition by an irregular boundary having a close general resemblance to the south boundary line indicated on the plat in all of its points except that of distance or length of lot lines as indicated on the plat. The plat of the Western addition shows by figures marked thereon that the length of the northwesterly line of lot 4 extending to the south boundary of the plat is only eighty-one feet, and the southeasterly line of lot 3 extending to the same boundary is only twenty-two feet. To the boundary found by the court, viz., the edge of the

plateau, the length of the former line is at the utmost 105 feet and the latter thirty-three feet. No field-notes of the survey are produced. These lots are both shown on the plat to be what are commonly known as fractional lots; that is to say, the irregular south boundary of the plat cuts the end line and the farther side line of lot 4, leaving this lot roughly triangular in shape, and cuts off the south corner of lot 3, leaving the latter in the shape of a parallelogram with one corner lopped off. The irregular line which thus closes on the south the survey of the plat in question has indicated on the plat all along that side of it toward the descent from the plateau a series of short parallel pen lines such as are commonly used by surveyors and platmakers to indicate elevation.

The appellant contends that the courses and distances marked on the plat, instead of the location of the edge of the plateau on the ground, should govern the location of the south boundary of the plat in question, and consequently the location on the ground of the boundary line in dispute between the parties. The cases of *Davis v. Rainsford,* 17 Mass. 207; *Murdock v. Chapman,* 9 Gray, 156; *Slater v. Rawson,* 1 Met. 450; *Thatcher v. Howland,* 2 Met. 41; *Parks v. Loomis,* 6 Gray, 467; 4 Lead. Cas. Real Prop. 367; *Buffalo, N. Y. & E. R. Co. v. Stigeler,* 61 N. Y. 348; *Higinbotham v. Stoddard,* 72 N. Y. 94; *White v. Luning,* 93 U. S. 514, 525; *Grier v. Pa. C. Co.* 128 Pa. St. 79, 18 Atl. 480; *Wharton v. Garvin,* 34 Pa. St. 340; *Esmond v. Tarbox,* 7 Me. 61; and *Pereles v. Gross,* 126 Wis. 122, 105 N. W. 217, are cited to the several exceptions to the rule that monuments control courses and distances in the determination of boundaries. *Pereles v. Gross,* 126 Wis. 122, 128, 105 N. W. 217, is, however, not such a case. That case on this point merely affirms that "where there is absolutely no direct evidence as to the place of physical location on the ground of the line or point in question or of any intervening point, the declaration of the plat that it is

so many feet in a given direction from the starting point must control, at least in absence of other physical facts inconsistent with such result." We think this case is not within any of the exceptions mentioned in the other cases cited by appellant. Where there is a natural monument or what is equivalent to a natural monument there cannot be said to be "absolutely no direct evidence as to the place of physical location on the ground of the line or point in question." In *Madison v. Mayers*, 97 Wis. 399, at page 411 (73 N. W. 43, 46), the following is quoted with approval:

"In ascertaining the true location of the streets, lots, and blocks in a city, according to the plat and survey thereof, regard is to be had (1) to the natural monuments referred to therein, and (2) to the artificial monuments placed by the surveyor to mark lines or boundaries, before resorting to the courses and distances marked on the plat or survey."

Thus courses and distances in this classification come third in order of certainty, but it is not intended to lay down a rule of law that courses and distances shall, in all cases, overcome every other species of evidence with reference to location except natural or artificial monuments. In *Galesville v. Parker*, 107 Wis. 363, 83 N. W. 646, it is said:

"The rules by which the lines of such plats are to be ascertained are well settled. In the absence of natural boundaries or monuments, and of monuments or stakes set in the course of the original survey, the lines of ancient fences and long-continued occupation of adjacent lots and blocks in the same plat, if evidently intended to mark the true lines of such lots and blocks, have greater probative force than mere measurements of courses and distances."

The fact that there exists on the ground south of the survey in question an abrupt descent from the plateau upon which the lots are situate, and that the contour of that descent on the upper surface would cut the lot and street lines and close the survey substantially as indicated on the plat, although at a slightly greater distance to the south as stated, and the fact

that the plat contains a picture or representation of such de-
scent by the short parallels before mentioned, and that the
line at the beginning of such descent or top of the ascent cor-
responding with the edge of the plateau is made to appear to
close the survey of the plat on the south, and that without
such plateau edge there are no data from which such irregu-
lar or meander closing line could be located between the points
of contact of the street and lot lines with the southern bound-
ary, all give the point indicated in the finding of the court
the probative value of a natural monument, mentioned not in
the writing, for we have not the field-notes of the survey, but
by pictorial representation on the plat. Having arrived at
this conclusion, it follows that the judgment must be affirmed.

*By the Court.*—The judgment of the circuit court is af-
firmed.