Johnson, Appellant, vs. Westrick and others, Respondents.

*December 4, 1929—January 7, 1930.*

406

408

For the appellant there was a brief by *Wilbershide, Baumblatt & Weisman* of Racine, and oral argument by *Leonard P. Baumblatt.*

For the respondents there was a brief by *Beck, Smith & Heft* of Racine, and oral argument by *Carroll R. Heft.*

FOWLER, J.  The learned trial judge based his ruling for judgment notwithstanding the verdict on the view that the southwest corner of block 54 was necessarily fixed by tying back to the monuments at the ends of Racine street; that is, that this corner was necessarily thirty feet east from the middle line of Racine street as fixed by these monuments.  This does not necessarily follow.  The southwest corner of the block was where the original surveyor of the plat fixed it by the setting of a stake or other monument, ·if he set such a marker, regardless of where present surveys may fix the center line of the street.  Where he set the corner stake, if he did set it, is the corner of the block according to the original plat regardless of inaccuracies in his measurements judged by the center line of the street.  Were there direct testimony to the point that the original surveyor set a stake at the corner of the block where the corner is now located the verdict of the jury would be manifestly right.  Justification of their verdict is not so clearly apparent in the absence of such testimony, but we are of opinion that it has substantial support and that judgment for the plaintiff should have been entered upon it.

A history of the plat involved and the way titles based upon it have become fixed is given in the case of *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177, decided in 1893.  This was an action by the city to compel removal of a fence of an abutting owner as an obstruction to another street running through the plat.  Judgment below went for the city.  Judge Dodge, for the lotowner, appealed and the judgment was reversed.  It was held that the east line of the street was where the original surveyor placed it, not where it should be according to resurveys or subsequent surveys;

that subsequent surveys are worse than useless; they only serve to confuse, unless they agree with the original survey. It was considered that if the fence was on the line as fixed by the original survey it must stand as the street line no matter how inaccurate the original survey may appear to have been from later surveys. It was shown by old settlers on the trial of that case that the lotowners set out shade trees, built fences, and located their buildings with reference to stakes set on the original survey, and this testimony was considered better evidence of the location of the street line than any resurveys. The court said:

"It is fortunate that this evidence is yet in existence. The time will soon come when it will have been lost by the destruction of all monuments, natural or artificial, and by the death of old inhabitants. Then resort must be had to evidence of lesser degree to establish ancient boundaries, and long-continued occupation with respect to unchanged lines, and reputation, even, may be the best evidence available. . . . This line so practically located has become an ancient boundary, in favor of which the rules of evidence are and should be liberal."

The time referred to in the opinion has now come. The evidence is perhaps less strong than in the *Emerson Case,* but it was for the jury to give to the testimony of surveyor Henry such weight as they saw fit. Evidently property in the block was first sold and conveyed at the east side, and the fact that the distances as shown by the calls of the conveyances of the tracts fronting on Ninth street checked with the practical location of the street line of Racine street as actually used supports the inference that the occupied line is the line originally fixed. So does the testimony of Williams, who was evidently a man of mature years although his age does not appear. The jury were justified in finding from his testimony and Henry's and other testimony respecting fences that the line of the street was orig-

inally located where the fences on the west side of the block and the adjacent sidewalks were built and stood at the time the parties purchased their property. The line of the street as practically located was the block line, and the south end of that line was the southwest corner of the block as originally located. The ordinance by its terms purporting to vacate the east three feet of Racine street, properly construed, was a recognition by the city that the street line originally was located where it was shown to be by practical location. This vacation gave the Westricks nothing. They already had what they claim it gave them. Thus locating the southwest corner of the block gives to each party precisely what his deed calls for and precisely what he understood he was getting and what his grantor understood he was conveying when the deeds were executed. Deeds, like any other instrument, should be construed according to the intent of the parties at the time of their execution, and so construing them, the plaintiff's west line was forty feet east from the south end of the west fence and the Westricks' west line was that fence. The parties meant by the southwest corner of the block the southwest corner as it then existed through practical location.

*By the Court.*—The judgment is reversed, with directions to enter judgment for plaintiff with nominal damages for wrongful withholding of possession of the strip.