BEDUHN and wife, Respondents, v. KOLAR and wife, Appellants.*

*No. 115. Submitted November 2, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 272.)

* Motion for rehearing denied, without costs, on January 30, 1973.

For the appellants the cause was submitted on the briefs of *Richard J. Gould* of Green Bay.

For the respondents the cause was submitted on the brief of *Kaftan, Kaftan, Kaftan & Kuehne, S.C.,* of Green Bay.

HALLOWS, C. J.   As is usual, boundary disputes are generally between friends who become enemies and the facts are detailed and somewhat confusing, all of which give rise to the conflicting principles of law.  The difficulty in this case arises because the Kolars give to the words "south," "east," and "west," the exactness which would be required by the use of the terms "due south," "due east," and "due west," rather than taking such directions less literally so the description of the land fits its topography and the natural monuments, as the trial court found to be the intent of the parties.

The disputed parcel is part of the land which lies along the west side of Clark's Lake in Door county, which was owned by the Butts family since 1923 and was known as the "John Feuerstein lot."  The description in the deed to Butts to this lot is lot 3, sec. 33, town 29 north, range 27 east, Door county, and established its commencing point "1 rod south from the south side of a building

[known as the 'Clubhouse'] now standing and being near the shore of the lake, thence southeasterly along the shore of the lake 16 rods, thence west 10 rods." The rest of the description takes the direction back to the starting point by using the phrase "northwesterly parallel with the shore of the lake 16 rods, thence east 10 rods to place of beginning." The deed provides for riparian rights. The Beduhns acquired a part of this tract from Anna Butts but the starting point was located at the shore of Clark's Lake 1,006.5 feet southeasterly from where the north line of lot 3 struck the shore of the lake. The description then said the commencement point was the southeast corner of a tract previously deeded to Louis and Mary Peffer by warranty deed giving the recording data. The description then proceeds with references to the high watermark on Clark's Lake and grants riparian rights and describes the commencement point of the northeast corner as being marked with a stake 76 feet southeasterly of a blazed birch tree on the high watermark of Clark's Lake.

In 1946 the Kolars acquired land to the south of the Beduhns' from Albert and Emma Shimmel. In this deed the description started with a point on the shore of Clark's Lake "at the southeast corner of the tract in said lot owned by John Feuerstein." The description then goes along the shore of Clark's Lake for three rods, thence west parallel with the south line of the John Feuerstein land and then completes the description to the starting point. Between these two pieces of property lies a lot approximately 110 feet wide which was purchased from Anna Butts by Beduhns' son-in-law in 1947 and conveyed by him in 1957 to Mr. Beduhn. It is a part of this lot which is in dispute. The deed from Anna Butts describing this land began at a point on the shore of Clark's Lake at the southeast corner of the land deeded to the Beduhns and ran southerly along the shore of the

lake to the northeast corner of the land described in the Kolar deed, thence westerly along the northerly boundary of the Kolars' land (this is the boundary line in dispute) to a private road which ran northerly and southerly and roughly parallel to the lakeshore behind all the lots. Thus the southern boundary of this lot was described in terms of the northern boundary of the Kolars' lot.

The Sladky-Thomas survey was made in 1961 for Frank Butts in which an attempt was made to fit the lot lines with the general occupation of the land. About this time, the Kolars purchased land southeasterly of the land they had purchased from the Shimmels and in 1965 purchased another parcel to the south.

In the fall of 1965, Mr. Beduhn, following some dubious advice, put posts near the common boundary line to prevent the Kolars from using a road across the corner of the Beduhns' property. This road had been used since 1946 by the Kolars as access to their property from the roadway which ran behind the lake lots. The Kolars had a survey made in 1966 by one Bernard J. Danhieux, a registered surveyor who worked with Kolars' son for the Wisconsin highway department. To determine the location of the north line of the Kolars' property, it was necessary to reconstruct the Feuerstein tract. Danhieux took the description in the old Feuerstein deed to Butts and interpreted "south," "east," and "west" to mean "due south," "due east," and "due west." In doing so, his starting point, instead of being on the lakeshore according to the description was due south from the old clubhouse and he disregarded the language "along the shore of the lake" and "northwesterly parallel with the shore of the lake" in order to run the north and south boundaries due east and west. After relocating the Feuerstein lot, Danhieux reconstructed the Kolars' lot from the newly established southeast corner of the Feuerstein tract and its due east and west southern boundary. As a

result, in his survey he located the Kolars' property as a rectangular area with the east boundary approximately 55.5 feet from the shoreline and with its south and north boundaries due east and west extending through the wooded lot claimed by the Beduhns and also partly into the Beduhns' cottage lot and across the private road, including some land beyond the road. As a result of his placement of the Kolars' lot, the Kolars' cottage, which was on the land when they purchased it, and their water well were not on their lot and they had no lakeshore. Kolars argue this is of no importance in this case because the Beduhns must stand on the strength of their deed and not on the weakness of the Kolars' title. The Kolars claim the deeds are unambiguous and therefore a strict following of the description must be made and no extrinsic evidence is admissible and further that property lines cannot be established by acquiescence without adverse possession.

It is quite true that in an ejectment action, the plaintiff must stand on the strength of his title and not upon the weaknesses of the defendant's. 18 Am. Jur., *Ejectment,* p. 21, sec. 20; *Chris Schroeder & Sons Co. v. Lincoln County* (1943), 244 Wis. 178, 11 N. W. 2d 665; *Illinois Steel Co. v. Bilot* (1901), 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Slauson v. Goodrich Transportation Co.* (1898), 99 Wis. 20, 74 N. W. 574, 40 L. R. A. 825. We think the Beduhns' title is strong enough to carry their burden and they need not rely upon the weaknesses of the Kolars' title.

A survey of a description does not determine title to land but seeks to find and identify the land embraced within the description. A description is not necessarily unambiguous because on paper one can draw or illustrate the description. A description of land is just what it purports to be, a word representation of boundaries in reference to land, and to be unambiguous must reasonably

fit the topography of the land to which it refers when it uses natural monuments. It is quite true that a description of metes and bounds, or of courses and directions, containing no reference to topography or monuments may be unambiguous on its face. But a description which describes land in reference to natural monuments in part is ambiguous if there are internal inconsistencies in laying it out, and thus extrinsic evidence is necessary. Here, the deeds made reference to the shore of Clark's Lake and gave riparian rights. Since these references go to the very essence of a lake lot, the reference to natural monuments cannot be overridden by a literal and strict interpretation of a direction "south," "east," or "west," which results in an impractical and unreasonable layout on the land with no lake frontage. Natural monuments control over courses and distances. *Timme v. Squires* (1929), 199 Wis. 178, 225 N. W. 825; *Brew v. Nugent* (1908), 136 Wis. 336, 117 N. W. 813; *Du Pont v. Davis* (1872), 30 Wis. 170.

In *Schmitz v. Schmitz* (1865), 19 Wis. 222, 226 (*207, *210), we held in a somewhat analogous situation the words "west" and "west half" could not be rigidly construed and stated these words as applied to land sometimes have a very precise meaning and sometimes they are used very loosely and indefinitely. We have not overlooked cases cited by the Kolars that the terms "east" and "west" used in descriptions of boundaries as courses, without qualification or variation, mean "due east" and "due west." *See: E. E. McCalla Co. v. Sleeper* (1930), 105 Cal. App. 562, 288 Pac. 146, 148; *Anaheim Sugar Co. v. Orange County* (1919), 181 Cal. 212, 183 Pac. 809, 813; *Livingston Oil & Gas Co. v. Shasta Oil Co.* (Tex. Civ. App. 1938), 114 S. W. 2d 378, 381. But a more basic rule of construction requires the intent of the parties to the deed to be ascertained by their use of the words in the description in reference to the land. In this case the

parties did not intend south, east, and west to mean "due south," "due east," and "due west," because the other parts of the description referred to natural monuments which would have to be disregarded if these directions were to be read strictly.

We think the trial court correctly considered the deeds were ambiguous and the intentions of the parties controlled. *See: Johnson v. Westrick* (1930), 200 Wis. 405, 409, 410, 228 N. W. 499; [1] *Lintner v. Office Supply Co., Inc.* (1928), 196 Wis. 36, 219 N. W. 420. The record is replete with evidence of what the intentions of the parties were as expressed by their actions. This includes the original location of the cottages, the fact the lot lines generally run at right angles to the shore of the lake, the attempt of the Kolars and their son-in-law to buy part of the disputed land, the acceptance by the Kolars of a deed from Frank Butts, its placement on record in 1961 which located the disputed boundary in accordance with the Sladky-Thomas survey, and the fact no claims were made to the land as laid out by the Danhieux survey until after the dispute arose over an incidental matter. In respect to the right-of-way over the lot, the trial court confirmed the right-of-way in the Kolars and this question is not an issue on this appeal.

We need not consider the question of adverse possession. This is not a ground relied on by the trial court.

---

[1] "It was held that the east line of the street was where the original surveyor placed it, not where it should be according to resurveys or subsequent surveys; that subsequent surveys are worse than useless; they only serve to confuse, unless they agree with the original survey. It was considered that if the fence was on the line as fixed by the original survey it must stand as the street line no matter how inaccurate the original survey may appear to have been from later surveys. It was shown by old settlers on the trial of that case that the lot owners set out shade trees, built fences, and located their buildings with reference to stakes set on the original survey, and this testimony was considered better evidence of the location of the street line than any resurveys."

Nor is this a case to be placed upon the doctrine of acquiescence whereby one can claim title to land in dispute by occupancy for less than a statutory period. Under the doctrine of acquiescence, there must be a dispute concerning the boundary line and some acceptance in relation thereto. Thus a boundary line may result from an estoppel *in pais*. *Buza v. Wojtalewicz* (1970), 48 Wis. 2d 557, 180 N. W. 2d 556; *Rottman v. Toft* (1925), 187 Wis. 558, 204 N. W. 585; *Peters v. Reichenbach* (1902), 114 Wis. 209, 90 N. W. 184; *Pickett v. Nelson* (1888), 71 Wis. 542, 37 N. W. 836. It is true the trial court referred to acquiescence in the Sladky-Thomas survey, but this reference to acquiescence was in relation to what the parties intended or considered to be their property by virtue of the descriptions in the deeds, not to any dispute. Perhaps better terminology would have been the "acts and nonacts of the parties" in reference to the boundaries of their property as a recognition thereof rather than an acquiescence therein.

*By the Court.*—Judgment affirmed.