Bruce F. GILBERT and Ellen F. Gilbert,
Plaintiffs-Respondents,

v.

Gerard G. GEIGER and Kelly K. Geiger,
Defendants-Appellants.†

Court of Appeals

*No. 2007AP95. Submitted on briefs October 29, 2007.
—Decided January 9, 2008.*

2008 WI App 29

(Also reported in 747 N.W.2d 188.)

† Petition to review denied 6/10/08.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *David A. Sayas* of *Sayas, Schmuki, & Plum S.C.,* Wauwatosa.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Phillip J. Eckert* of *Eckert Law Office, LLC,* West Bend.

Before Brown, C.J., Anderson, P.J., and Nettesheim, J.[1]

---

[1] Although this opinion is released after the effective date of Judge Nettesheim's resignation, all substantive work on this case was complete prior to that date.

¶ 1. ANDERSON, P.J. Gerard and Kelly Geiger and Bruce and Ellen Gilbert own adjoining parcels of lakefront property in Iron county. The Geigers appeal from a judgment resolving a boundary dispute in favor of the Gilberts. The Geigers contend the trial court erred in: (1) finding the property deeds ambiguous and resorting to extrinsic evidence to determine the parties' intent, (2) concluding what the parties' intent was, and (3) entering a declaratory judgment in the Gilberts' favor without exploring reformation of the legal description.

¶ 2. We conclude that the two deeds' metes and bounds language, although consistent, is rendered ambiguous because it does not match the location of an existing physical marker both deeds reference. The trial court therefore properly looked to parol evidence to resolve the ambiguity. We also hold that the duty of the Geigers' resurveyor was limited to ascertaining the lines and corners of the original survey. Finally, we hold that, under WIS. STAT. § 847.07 (2005–06),[2] the Washington county court properly refused to reform the Iron county deed.

## BACKGROUND

¶ 3. Most of the facts are not in dispute. The Gilbert and Geiger properties originally were part of one larger tract of land owned by Ray and Joan Wolfe. The land sits on Trude Lake in Iron county in northern Wisconsin. The Wolfes decided to divide and sell some of the land, and in December 1987 commissioned surveyor Allen Wegner to survey it for that purpose. Ray Wolfe accompanied Wegner during the surveying, showed him what he intended to sell, and watched Wegner drive the iron pipes used as boundary stakes.

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version.

¶ 4. Wegner's certified survey depicted a parcel with northern and southern boundaries running parallel to the section lines. The northernmost east-west boundary measured 1115.06 feet in length. It also depicted iron pipes set at each corner, and showed the northwest and southwest corner markers set in 20 feet east of the Trude Lake shoreline. In May 1988, the Wolfes conveyed a parcel by warranty deed to Robert and Doris Hanneman. The metes and bounds description in the warranty deed tracked the certified survey and expressly referenced the "iron pipe near the shore of Trude Lake" located at the northwest corner of the property.[3]

¶ 5. In 1991, the Wolfes conveyed to the Gilberts the adjoining parcel to the north. The description in the warranty deed of the southern boundary of the Gilbert property matched the description of the northern

---

[3] The 1988 Wolfe-to-Hanneman warranty deed reads in relevant part:

A parcel of land located in the Southeast ¼ of the Southwest ¼, Section 16, Township 42 North, Range 3 East more particularly described as follows:

Commencing at the ¼ corner common to Sections 16 and 21, marked by a 2" brass capped iron pipe; thence N2°59'E, along the North-South ¼ line, a distance of 1237.66 feet to the Westerly right-of-way line of a town road marked by an iron pipe and the POINT OF BEGINNING; thence continuing N2°59'E, along said ¼ line, a distance of 84.33 feet to an iron pipe; *thence S89°50.9'W, parallel to the North line of the said SE ¼ of the SW ¼, a distance of 1115.06 feet to an **iron pipe near the shore of Trude Lake;** thence S27°15'W, along the shore of said lake, a distance of 300 feet to an iron pipe;* thence N89°50.9'E, *parallel* to the North line of the said SE ¼ of the SW ¼, a distance of 1115.54 feet to the Westerly right-of-way line of said town road, marked by an iron pipe; thence N35°58.9'E, along said Westerly right-of-way line of the town road, a distance of 225.51 feet to the POINT OF BEGINNING. (Italics and bold added.)

boundary of the Hanneman property, running "a distance of 1115.06 feet to an iron pipe near the shore of Trude Lake."[4] The Gilberts did not order a new survey. Ray Wolfe and/or his realtor showed Bruce Gilbert the property lines and boundary stakes and gave Gilbert a copy of the Wegner survey. In the next few years, the Gilberts built a house and made other improvements to the land.

¶ 6. The Hannemans sold their property to the Geigers in 2003. The Geigers viewed the property before the purchase, but "never did know" the location of the stake marking the property line dividing that parcel from the Gilberts'. Gerard Geiger saw a power pole which serviced the Gilbert property, but did not ask on whose property it was situated. The Geigers commissioned Thomas Thiessen of Coleman Engineering to survey the lot. The Thiessen resurvey was not finished by the time of the closing, but the Geigers did have a copy of the Wegner survey.

¶ 7. The Thiessen resurvey later revealed the shared boundary to be 1051.23 feet, in contrast to the 1115.06 feet the Wegner survey showed, leaving the Geigers with forty-five feet less lake frontage than they had thought. The only iron pipe found "near the shore of

---

[4] The 1991 Wolfe-to-Gilbert warranty deed reads in relevant part:

Parcel 2

All that part of the Southeast ¼ of the Southwest ¼ of Section 16, Township 42 North, Range 3 East LYING North of the following described line:

Commencing at the ¼ corner common to Section 16 and 21, marked by a 2" brass capped iron pipe; thence N259'E, along the North-South ¼ line, a distance of 1321.99 feet to the POINT OF BEGINNING; *thence S89°50.9'W, parallel to the North line of said SE ¼ of the SW ¼, a distance of 1115.06 feet to an **iron pipe near the shore of Trude Lake**,* the POINT OF ENDING of said line. (Italics and bold added.)

Trude Lake" was about 45 feet south of the northern boundary. A pipe placed at the northwest corner 1115.06 feet from the northeast corner would have been in Trude Lake. Thiessen concluded that the found pipe could not have represented a marker for the proper lot line, and so decided not to use it, instead going with the metes and bounds description. According to the resurvey, structures on the southern part of the Gilberts' property, including the power pole, encroached over the Geigers' north lot line.

¶ 8.   The Geigers notified the Gilberts of the resurvey results. In something of a turnaround, the Gilberts filed suit against the Geigers, seeking a declaration of the correct property line. The Geigers counterclaimed for encroachment/private nuisance and sought damages. At the start of the one-day bench trial, the parties asked the court to bifurcate the Geigers' counterclaims, pending the trial outcome. The court took under advisement the Geigers' motion in limine to exclude all extrinsic evidence to vary the boundary line from that described in the deeds but agreed to conditionally admit some of that evidence during trial. The Geigers unsuccessfully moved for a directed verdict at the close of their case. After considering the posttrial briefs it requested, the court issued a written decision, declaring that the iron pipe defined the disputed boundary. The court also ruled that an action to reform the deed must be brought in Iron county, where the conveyance was recorded. The Geigers appeal.

## DISCUSSION

### *Admissibility of Extrinsic Evidence*

¶ 9.   The Geigers first contend that the deeds' legal description of the common boundary line is unambiguous and therefore we must confine our analysis to

the language of the instrument. The Gilberts respond that the language is rendered ambiguous when actually applied to the property to which it refers, calling for introduction of extrinsic evidence of the parties' intent.

¶ 10. Resolution of the issue requires that we construe the warranty deeds to determine the parties' intent. *See Rikkers v. Ryan*, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). The primary source for determining intent is what is written within the four corners of the deed. *Id.* If the language is unambiguous, it presents a question of law. *Id.* Whether an ambiguity exists itself is a question of law. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 638, 566 N.W.2d 158 (Ct. App. 1997). Resort to extrinsic evidence is proper to show the intent of the parties only if we conclude there is ambiguity within the four corners of the documents. *See Rikkers*, 76 Wis. 2d at 188. If so, then how the words are used is a question of fact. *Id.* We will not disturb the trial court's factual findings unless they are clearly erroneous. *See Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979); *see also Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 25, 290 Wis. 2d 514, 714 N.W.2d 155.

¶ 11. The Geigers assert that the legal descriptions could not be clearer because they "contain identical calls evidencing a definite, certain, and ascertainable boundary between them." The Geigers' surveyor and their expert witness both testified that the language was clear and unambiguous. The Gilberts' expert testified similarly. In fact, when Thiessen, the Geigers' surveyor, used a transparent overlay of his survey, it showed his and the Wegner survey to be "virtually the same" survey, with the exception of the northwest corner pipe some forty-four feet off the parallel line. The Geigers assert the trial court should not have

considered extrinsic evidence of location and possession to show the parties' intention because that is proper only when the legal description is "uncertain and doubtful." *See Chandelle Enters., LLC v. XLNT Dairy Farm, Inc.*, 2005 WI App 110, ¶ 12, 282 Wis. 2d 806, 699 N.W.2d 241 (citing *Elofrson v. Lindsay*, 90 Wis. 203, 205, 63 N.W. 89 (1895)). They contend that, under *Chandelle*, the location of any marker is admissible extrinsic evidence only if the location of the boundary line was not described in the deed. *See id.*, ¶ 12.

¶ 12.　The issue in *Chandelle* was whether a fence line thought to be the boundary between two adjoining parcels could be declared the boundary in the face of a contrary survey. *Id.*, ¶¶ 1–3. The court of appeals held that the trial court erred when, despite the survey, it declared the fence line to be the boundary. *Id.*, ¶¶ 5–6, 21. The court of appeals was persuaded that descriptions in a conveyance made unambiguously by metes and bounds control over the parties' acquiescence in a wrong boundary. *See id.*, ¶¶ 11–12. The court said that unless a deed's description is "uncertain and doubtful," extrinsic evidence to vary its terms or to show an intent contrary to that stated "is not competent." *Id.*, ¶ 12.

¶ 13.　Aside from the fact that *Chandelle* was brought on theories of acquiescence and reformation for mutual mistake, *id.*, ¶ 1, the Geigers' reliance on it is misplaced. The certified survey there plainly described the parcels according to section, township and range. *Id.*, ¶ 2. The fence line the parties had treated as the boundary was not referenced.

¶ 14.　Here, however, the otherwise clear metes and bounds descriptions are supplemented by reference to an artificial monument, the iron pipe, placed near a natural monument, Trude Lake. The legal description

in a deed may be ambiguous, even if it can be accurately drawn on paper, if the description references natural monuments and does not fit the topography of the land. *Beduhn v. Kolar*, 56 Wis. 2d 471, 476–77, 202 N.W.2d 272 (1972).

¶ 15.   Furthermore, a description of land is just that:    a word representation of boundaries in reference to land. *Id.* at 476. A basic rule of construction requires that we determine the intent of the parties to the deed by the words they chose to use. *See id.* at 477. The description is not necessarily unambiguous because on paper one can draw or illustrate the description. *Id.* at 476. Rather, to be unambiguous it must reasonably fit the topography of the land to which it refers when it uses natural monuments. *Id.* at 476–77. If a strict reading requires us to disregard references to monuments, we may look elsewhere to ascertain the parties' intent. *See id.* at 477.

> It is quite true that a description of metes and bounds, or of courses and directions, containing no reference to topography or monuments may be unambiguous on its face. But a description which describes land in reference to natural monuments in part is ambiguous if there are internal inconsistencies in laying it out, and thus extrinsic evidence is necessary.

*Id.* "[A]n uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground" is known as a "latent ambiguity." 23 Am. Jur. 2d *Deeds* § 262 (2007). As a rule, parol evidence is admissible in such a case. *Id.*

¶ 16. The warranty deeds here, virtually identically worded, both reference "an iron pipe near the shore of Trude Lake." A surveyor going the bearing and distance described in the Wegner survey would have driven the disputed pipe in Trude Lake, not near it. An existing iron pipe was located in the vicinity. We conclude that the legal descriptions' reference to "an iron pipe near Trude Lake" renders them at least latently ambiguous. Consideration of extrinsic evidence was proper.

## *The Parties' Intent*

¶ 17. The Geigers next argue that the trial court's findings regarding the parties' intent were clearly erroneous. They contend that the pipe located some forty-four feet off the mark must be error because it substantially alters the 300 feet of shoreline Ray Wolfe testified he meant to convey to the Hannemans and contradicts the language of the deeds describing parallel boundaries.

¶ 18. A good part of the Geigers' argument rests on the results of Thiessen's survey which, we observe, actually was a survey of a legal description, or a "resurvey." "A survey of a description does not determine title to land but seeks to find and identify the land embraced within the description." *Beduhn*, 56 Wis. 2d at 476. "In resurveying a tract of land according to a former plat or survey, the surveyor's only function or right is to relocate, upon the best evidence obtainable, the corners and lines *at the same places where originally located by the first surveyor on the ground.*" *Pereles*

474

*v. Gross,* 126 Wis. 122, 129, 105 N.W. 217 (1905) (emphasis added); *see also* 12 Am. Jur. 2d *Boundaries* § 57 (2007).

¶ 19.  The object of a resurvey is to furnish proof of the location of the original survey's lost lines or monuments, not to dispute the correctness of it. 12 Am. Jur. 2d *Boundaries* § 57. If the original corners can be found, the places where they were originally established are conclusive without regard to whether they were in fact correctly located. *Id.* The priority of calls is, first, the natural monuments to which it refers; second, the artificial monuments the surveyor places to mark the boundaries; and, third, the courses and distances marked on the plat or survey. *Miller v. Lavelle,* 130 Wis. 500, 504, 110 N.W. 421 (1907); *see also Timme v. Squires,* 199 Wis. 178, 185, 225 N.W. 825 (1929) (natural monuments control over courses and distances).

¶ 20.  Wolfe, the original owner, testified that he watched Wegner place the original stakes and that the stakes were in the same location when he sold the property to the Hannemans and when he showed the stakes to the realtor involved in the Hanneman/Geiger transaction. Thiessen testified that because the pipe did not meet his accuracy expectations, he decided not to use it as a boundary marker.

¶ 21.  The trial court found that the iron pipe is the one referred to in the legal description based on Wolfe's testimony and because all parties before Geiger relied on that pipe as defining that corner of the properties. The court termed "speculation" the suggestions that there may exist a second pipe somewhere in Trude Lake due to changes in the lake level over the years. The court concluded that the iron pipe was the

pipe referred to in the legal description, and declared that the monument, not the writing, most accurately represented the parties' intent as to the westernmost boundary. These findings are not clearly erroneous. We will not substitute our judgment for that of the trial court because, when it acts as the finder of fact, it is the ultimate arbiter of witness credibility and the weight to be given to each witness' testimony. *Pindel v. Czerniejewski*, 185 Wis. 2d 892, 898–99, 519 N.W.2d 702 (Ct. App. 1994).

### Reformation of the Deed

¶ 22. Finally, the Geigers argue that the trial court failed to address or settle the deed reformation issue and to address their innocent third-party status, such that the controversy is not terminated.

¶ 23. We disagree. The trial court declared the rights of the parties, as it was requested to do. What is left to do is to reform the deed. However, an order correcting the description in a conveyance is to be done by the circuit court of the county in which the real estate conveyance was recorded. WIS. STAT. § 847.07(1). The warranty deeds here were recorded in Iron county. Jurisdiction lies there, not in Washington county.

*By the Court.*—Judgment affirmed.