COURT OF APPEALS
DECISION
DATED AND FILED

November 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP975**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV42

**IN COURT OF APPEALS
DISTRICT IV**

LISA A. RIEGLEMAN REVOCABLE TRUST,

　　PLAINTIFF-APPELLANT,

　V.

MICHAEL EDER, BARBARA EDER, JOHN A. ROTHSTEIN,
JENNIFER ROTHSTEIN, SHARON F. ZACHOWSKI REVOCABLE TRUST,
JEROME A. LIPPERT AND DONNA R. LIPPERT,

　　RESPONDENTS-RESPONDENTS.

　　　　APPEAL from a judgment of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed*.

　　　　Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lisa A. Riegleman Revocable Trust ("the Trust") appeals a final judgment, entered following a bench trial, determining the northern boundary of property that it owns in Lisbon, Wisconsin ("the property"). We conclude that the Trust fails to show that the circuit court acted improperly in rejecting the accuracy of the Trust's survey of the property and in accepting the accuracy of existing recorded surveys. Accordingly, we affirm.

**BACKGROUND**

¶2 This is a boundary dispute between the Trust and those persons and entities listed as respondents in the caption of this appeal ("the Neighbors"). The Trust and each of the Neighbors own properties located along a town line running east-west and separating the town of Clearfield (to the north) and the town of Lisbon (to the south).[1]

¶3 The property at issue here is in Section 2 in Lisbon, just south of and abutting the town line. Directly north of the property, and also abutting the town line, is Section 35 in Clearfield. As pertinent here, the Trust's deed describes the property as "[t]he east half of the east half (E 1/2 E 1/2) of fractional section two (2), township 16 north, range 3 east, town of Lisbon, Juneau County, Wisconsin."[2] The deed states that "access to [the property] is provided by" a road running along the town line ("the road"), which the deed describes as:

---

[1] The Neighbors' properties are either adjacent to or at least near to the property, and are located such that the redetermination of the property's boundaries sought by the Trust affects their boundaries.

[2] The Trust's deed describes two portions of land in the town of Lisbon—one northern, one southern—together comprising the complete property. The outcome of this dispute affects the entire property but the argument between the parties specifically concerns the location of the northeast corner, which is part of the northern portion of the property described in the deed.

a two (2) rod road, the center line of which is the town line separating Section 2 [in Lisbon] and Section 35 [in Clearfield] as established by a decision of the joint town boards and affirmed in a court award dated September 25, 1936 and located [in the] Highway Register ….

¶4     In 2015, the Trust requisitioned a survey from Quest Civil Engineers, LLC ("the Quest survey") to confirm the property's boundaries and, in particular, the location of the northeast corner of Section 2 (a survey "corner" being the intersection point of two survey lines, which, as pertinent here, meet at a right angle to define the northeastern boundary of the property). The Quest survey fixed the property's northern boundary as the center line of the road, approximately forty feet[3] north of the boundary established by two surveys from surveyor Gary Dechant ("the Dechant surveys") that had been recorded in 1994 and 1998. Thus, according to the Quest survey, the property is larger, and extends farther north, than what is shown on the recorded Dechant surveys. Given this conflict between the Quest and Dechant surveys, the Trust brought this action to quiet title and for a declaration of interest, seeking, among other relief, an order establishing the boundary lines of the property in accordance with the Quest survey.

¶5     The circuit court held a two-day bench trial on the Trust's action, the result of which would establish the settled location of the northeast corner of Section 2. The court heard testimony from the parties' surveyors. It also conducted a site visit of the property and the road. In a written decision, the court

---

[3] The Neighbors state that the Quest survey fixes the northern boundary line approximately *forty-nine feet* north of where the Dechant surveys fix that boundary line. Because it is unclear on what basis the Neighbors rely for the longer distance, and because the evidence on record better aligns with a distance of approximately forty feet, we use the latter distance. For purposes of this decision, it is immaterial whether the Quest survey extends the property's northern boundary by forty feet or forty-nine feet.

3

determined that the Dechant surveys were more accurate than the Quest survey on record.  Accordingly, the court entered a judgment and an order declaring that the 1998 Dechant survey depicts the northeast corner of Section 2 (and, by extension, establishes the Trust's northern boundary and the town line in the pertinent area).[4] The Trust appeals.

## DISCUSSION

### I.  Overview and Standards of Review

¶6    As our supreme court has recognized, boundary dispute cases "cannot easily and consistently be divided into doctrinal categories." ***Northrop v. Opperman***, 2011 WI 5, ¶27, 331 Wis. 2d 287, 795 N.W.2d 719.  Moreover, "doctrinal categories significantly overlap," ***id.***, and "are not used in a consistent fashion in the case law," ***id.***, ¶29.  Wisconsin case law on the settling of boundary disputes "demonstrates that the resolution of" these questions generally "depends on fact-specific analyses," ***id.***, ¶26, which frequently centers on the opinions of professional surveyors.  ***Id.***; *see also e.g., **id.**,* ¶¶41-56.

¶7    This case, indeed, involves a battle of the surveyors—the Quest surveyors versus surveyor Dechant—with the Trust seeking to prove to the circuit court that the Quest survey more accurately established the northeastern corner of Section 2.  The location of this corner, in turn, determines the location of the northern boundary of the property.

---

[4] The 1994 and 1998 Dechant surveys are of neighboring parcels and fix the same boundary line.  Although the circuit court order references only the 1998 Dechant survey, the order reflects the location of the northeast corner of Section 2 as determined by both surveys.

¶8      The parties agree that the disputed corner's correct location is wherever the original 1851 survey first set this corner.  Thus, both sets of surveys are technically "resurveys," meaning that they "do[] not determine title to land but seek[] to find and identify the land embraced within the [original] description" of the property—here, the 1851 survey.  *See **Gilbert v. Geiger***, 2008 WI App 29, ¶18, 307 Wis. 2d 463, 747 N.W.2d 188 (internal quotation marks and quoted source omitted).  In a resurvey, "the surveyor's only function or right is to relocate, upon the best evidence obtainable, the corners and lines *at the same places where originally located by the first surveyor on the ground*."  ***Id.*** (internal quotation marks and quoted source omitted); *see also **id.*** at ¶19  ("The object of a resurvey is to furnish proof of the location of the original survey's lost lines or monuments, not to dispute the correctness of it.").  The parties also agree that no direct evidence remains of an original marker in the ground for this corner based on the 1851 survey and that the Quest and Dechant surveys sought to retrace the historical location of the corner.

¶9      It is also undisputed that the Lisbon-Clearfield town line demarcates the northern boundary of the property.  Therefore, a central issue in this case is where that town line is.  The Trust's position is that the town line (and therefore the property's northern boundary) runs along the center of the road.  The Neighbors argue that the road runs *north* of the town line in that area.  Thus, although the parties and surveyors sometimes refer to the issue as involving the location of the property's "northeast corner," the issue on appeal boils down to the same question:  is the property line (or corner) on the center line of the road, or, as the Neighbors argue, is the property line (or corner) located some forty feet south of that point?

¶10      The Trust raises two threshold questions on appeal: (1) whether the circuit court's reliance on "extrinsic evidence" (that is, evidence apart from the deed) was proper, and (2) whether the Dechant surveys are contrary to Wisconsin property law because they do not treat the road as a monument that conclusively establishes the property's boundary line. We decide these two legal issues de novo. *See Gilbert*, 307 Wis. 2d 463, ¶¶10, 19. If we determine that there were no errors in this regard, then the circuit court's determination of the location of the northeast corner becomes a purely factual finding, resting on the court's assessments of witness credibility and the weight of the evidence presented. In such case, we review the conclusion deferentially, for clear error. *See Northrop*, 331 Wis. 2d 287, ¶42 ("[The] determination of the best evidence locating the boundary line … is essentially a finding of fact.").

*II. Analysis of the Trust's Arguments*

A. The circuit court properly rejected the Trust's argument that the deed unambiguously establishes the Trust's northern boundary and therefore controls.

¶11      The Trust argues that the deed to the property is unambiguous and therefore controls the location of the disputed boundary. As stated, the deed describes the pertinent portion of the property as follows, with emphasis on the language upon which the Trust relies:

> The east half of the east half (E 1/2 E 1/2) of fractional section two (2), township 16 north, range 3 east, town of Lisbon, Juneau County, Wisconsin…. *Access to the above described premises is provided by a two (2) rod road, the center line of which is the town line separating Section 2 [in Lisbon] and Section 35 [in Clearfield]* as established by a decision of the joint town boards and affirmed in a court award dated September 25, 1936 and located [in the] Highway Register ….

6

(Emphasis added; capitalization removed.) According to the Trust, this language "*unambiguously* establishes the location of [its] northern boundary" as the center of the road. Therefore, the Trust argues, the circuit court erred in considering evidence extrinsic to the deed in resolving the parties' boundary dispute. In support of its position, the Trust relies on **Chandelle Enterprises, LLC v. XLNT Dairy Farm, Inc.**, 2005 WI App 110, 282 Wis. 2d 806, 699, N.W.2d 241, which, as we explain below, is inapplicable here.

¶12 **Chandelle** addressed the doctrine of acquiescence and deed reformation based on mutual mistake. **Id.**, ¶1. In discussing these issues, we noted that, unless the property description contained in the deed is ambiguous, the court may not look to extrinsic evidence to determine the intent of the parties. **Id.**, ¶12. We concluded that, "because … the description by quarter section is not ambiguous, the doctrine of acquiescence does not apply." **Id.**, ¶16. The Trust's reliance on **Chandelle** is misplaced. First, this case does not involve the doctrine of acquiescence or deed reformation. Second, the Trust does not rely on the actual *property description* contained in the deed. Instead, it argues that a reference in the deed to *the location of the town line* should dictate the outcome. Third, the deed here describes which portion of Section 2 the Trust owns, but it does not purport to fix the location of Section 2 in relation to the road. It merely states that "[a]ccess" to the property is "provided by" the road. And although the deed describes "the center line of" the road as "the town line," the Trust fails to provide any authority for the proposition that a deed between private parties can be used to establish the location of a township line. We therefore decline to consider this argument. *See* **Industrial Risk Insurers v. American Eng'g Testing, Inc.**, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (arguments unsupported by legal authority will not be considered).

¶13    Accordingly, the Trust has failed to show that the deed controls the location of the disputed boundary, such that the circuit court was prohibited from considering evidence extrinsic to the deed in resolving the parties' boundary dispute.[5]

B. The Trust has not shown that the Dechant surveys are contrary to Wisconsin property law.

¶14    The Trust next argues that only the Quest survey, and not the Dechant surveys, followed Wisconsin law. Specifically, the Trust contends that the Dechant surveys failed to follow "Wisconsin's 'hierarchy' of evidence" or utilize "the best available evidence."

¶15    When a boundary cannot be determined from the deed and the original markers or monuments, a "circuit court looks to the best evidence of the boundary line." *Northrop*, 331 Wis. 2d 287, ¶42.[6] The "determination of the best evidence is essentially a finding of fact." *Id.* In this context, the hierarchy of "best evidence" for determining a boundary line is as follows:

> [M]onuments set by the original survey in the ground, and named or referred to in the plat, are the highest and best evidence. If there are no such monuments, then stakes set

---

[5] The circuit court determined that resort to extrinsic evidence was proper because the deed was latently ambiguous: it described a 2-rod (or 33-foot) road, but the court visited the road and observed that it was only about 8 feet wide. *See Gilbert v. Geiger*, 2008 WI App 29, ¶15, 307 Wis. 2d 463, 747 N.W.2d 188 (discussing "latent ambiguity"). The parties dispute whether the circuit court's conclusion was correct. We need not decide this point, however, given our conclusion that the deed does not address the dispositive issue of the location of the property's northern boundary in relation to the road.

[6] *Northrup* discusses boundary line determinations in "survey/fence cases," or cases in which there is a dispute between a survey and a longstanding landmark fixing a boundary. *See Northrop v. Opperman*, 2011 WI 5, ¶¶39-40, 42, 331 Wis. 2d 287, 795 N.W.2d 719. The parties appear to agree that the framework articulated in *Northrop* is applicable here and we take our lead from the parties in this regard.

by the surveyor or soon thereafter are the next best evidence. Buildings, fences, and other substantial improvements built according to the stakes laid out while they were present are the next best evidence of the line.

*Id.*, ¶47 (internal quotation marks, quoted source, and footnotes omitted).

¶16     In determining the best evidence, Wisconsin case law has also referred to a "priority of calls," in which natural monuments take precedence over artificial monuments. *See Gilbert*, 307 Wis. 2d 463, ¶19 ("'[t]he priority of calls is, first, the natural monuments to which [the plat or survey] refers; [and] second, the artificial monuments the surveyor places to mark the boundaries.'" (quoting *Miller v. Lavelle*, 130 Wis. 500, 504, 110 N.W.2d 421 (1907))).

¶17     The Trust argues that the "best evidence" was the road and that the Dechant surveys were flawed in not relying on this evidence to determine the property's northern boundary. This argument fundamentally misapplies the relevant case law. "Best evidence"—be it a natural or an artificial monument—is dependent on context. Here, the road might be dispositive evidence of the property's northern boundary line *if* there were undisputed evidence of all of the following:  that the road existed in 1851; that the original 1851 survey of the property referred to this road in fixing the northern boundary; *and* that the road ran along precisely the same path in the pertinent locations from 1851 to the present. Here, however, the 1851 survey does not refer to any monuments at all (including any roads). Moreover, the road that is now visible was not built until 1936, with no evidence in the record showing that it has remained in the same location since then.[7]

---

[7] The Trust's brief-in-chief repeatedly refers to the road as a "natural monument," but cites no authority for this position.  Although we need not decide this issue, we note that pertinent

(continued)

¶18　Our case law instructs that when, as here, the original monuments are lost or destroyed, "the best evidence to establish property lines *may* be long continued occupation," **Northrup**, 331 Wis. 2d 287, ¶48 (emphasis added), with "continued occupation" essentially referring to how local residents have themselves treated the boundary lines in that location, ***id.***, ¶¶49-56.　In such case, "an ancient fence (or other landmark) *may* be competent evidence of the location of the boundary," meaning, here, that the location of the road *may* be relevant. *See* ***id.***, ¶49 (emphasis added).　Thus, contrary to the Trust's assertion, the road is not dispositive evidence of the property's boundaries.　On this ground, we reject the Trust's position that the Dechant surveys are fundamentally unsound as a matter of law.　Rather, we must determine whether the circuit court clearly erred in accepting the Dechant surveys as more accurate (and, by extension, in determining that the location of the road was *not* the best evidence of the property's northern boundary).

C. The circuit court did not clearly err in finding that the Quest survey was less reliable than the Dechant surveys.

¶19　Because the terms of the deed do not establish the disputed boundary, and because the Trust has not shown that the Dechant surveys failed to comply with the law, this case comes down to a fact-based dispute.　The Trust argues that the center line of the road is the best evidence of the town's (and therefore the property's) boundary.　The Neighbors argue that the road as it now

---

authority from a source that this court has previously cited belies the Trust's assertion. *See* 12 AM. JUR. 2D *Boundaries* § 6 ("Natural monuments include such natural objects as mountains, streams, rivers, creeks, springs, and trees.　Artificial objects and monuments consist of marked lines, stakes, roads, fences, buildings, and similar matters marked or placed on the ground by the hand of man." (footnote omitted)); *see also* **Gilbert**, 307 Wis. 2d 463, ¶¶18-19 (citing 12 AM. JUR. 2D *Boundaries* with approval).

exists does not follow the town line and that other monuments are better evidence of the original town line. We construe the evidence and reasonable inferences in the Neighbors' favor, as we must. *See **Fields Found., Ltd. v. Christensen***, 103 Wis. 2d 465, 485, 309 N.W.2d 125 (Ct. App. 1981) (appellate court "must accept reasonable inferences drawn by the trier of fact from credible evidence"). This evidence includes the following.

¶20 Gary Dechant is a professional surveyor who, at the time of trial, was the Juneau County Surveyor. Dechant created the 1994 and 1998 surveys establishing the existing location of the northeast corner of Section 2 vis-à-vis the road. In surveying the area, Dechant recognized that, per BROWN'S BOUNDARY CONTROL AND LEGAL PRINCIPLES (a resource that the parties treat as a leading treatise on resurveying), there is a hierarchy of methods for determining the location of a corner. Only when the surveyor can find no evidence of the original corner should he or she use the "proportionate method," which involves working backwards from known boundary lines to triangulate a corner.

¶21 Dechant determined that use of the proportionate method was appropriate because the most prominent evidence tending to establish the town line in that location—the road—was "ambiguous." Specifically, a 1936 road order provided for the creation of a 2-rod (33-foot) road. A 1998 court order, entered on a certiorari petition to declare the road public and rebuild it, referred to the road as a 4-rod (66-foot) road (2 rods in Lisbon and 2 rods in Clearfield). Thus, Dechant's position was that, although he knew that the road existed within either a 2- or 4-rod corridor, he could find no evidence that the road was built *such that the center line fell on the town line*. In fact, according to Dechant, the evidence showed the opposite. For example, the road had several significant bends, so it could not possibly have tracked the straight town line in every location. Dechant also noted

that this was a "low marshy area"; in such cases, "[m]any roads [that were] intended to [follow] section lines [instead] followed the best suitable path that would best hold a road." Moreover, the operative statute on laying down town line roads permitted their location "as near to the town line as the situation of the ground will admit," which provided a statutory basis for laying out the 1936 road near, but not on, the town line.

¶22 Dechant therefore walked east-west across the pertinent location—approximately two miles—and surveyed via the proportionate method.[8] Dechant testified that other evidence supported the location he established for the northern boundary of Section 2. For example, he found a partially buried barbed wire fence consistent with the line as he determined it, indicating that someone had treated this location as a boundary. He also noted that his surveys, and not the Quest survey, most closely corresponded to the acreage originally calculated for Section 2.

¶23 Dechant also testified about evidence that he characterized as significant, and which he discovered years after the second of his two surveys in anticipation of the trial in this case. Dechant, in reviewing his past work, testified that he realized that a different surveyor had set down the location of a "mound and pit" in this area. Dechant testified that a mound and pit is "a common feature for marking corners in marshy areas during the original government survey or subsequent surveys" and that, for this reason, the location of an original marker

---

[8] The Trust repeatedly argues that Dechant "did not bother to walk the property," a puzzling assertion in the face of the circuit court's specific factual finding that "Dechant was the only [surveyor] who actually walked the whole land and even beyond." If the Trust intended to argue that this finding was clearly erroneous, then the Trust should have done so directly.

would be strong evidence of the location of the original survey line. Dechant testified that he visited the area, found a mound and pit, and determined that "it is in a perfect line with the line [he had already] established."

¶24    In contrast, the Quest surveyors treated the center line of the existing road as the best evidence of the northern boundary because, according to their testimony, the road demonstrated physical occupation—"where everybody's been kind of living [and] doing business."    In testifying, the Quest surveyors also referred to previous surveys, relying on monuments those previous surveyors set or accepted, and also relied on documents and court orders pertaining to the establishment of the road in 1936.

¶25    The circuit court found that the Neighbors "proved … that the Dechant survey is the proper northern boundary."    The court based its decision largely on the existence of the mound and pit testified to by Dechant, which the court found to be "very relevant and credible evidence" that "Dechant's survey is more valid."    The court noted also noted that "Dechant was the only [surveyor] who actually walked the whole land and even beyond," and remarked, "Maybe if the other surveyors would have done as diligent a job, they would have come to the same conclusion."

¶26    In arguing that the circuit court's findings are clearly erroneous, the Trust focuses on what it characterizes as Dechant's questionable decision to rely on the proportionate method.    But Dechant testified about why he chose that method, and the court accepted this explanation.    As stated above, Dechant also testified that additional evidence—and, he later determined, the original "mound and pit" monument—supported the accuracy of his results.    As stated, the "determination of the best evidence locating the boundary line … is essentially a

finding of fact." ***Northrop***, 331 Wis. 2d 287, ¶42. We will not disturb the circuit court's conclusion that Dechant properly conducted his survey.

¶27 The Trust also raises several arguments as to why Dechant was not a credible witness. For example, the Trust alleges that Dechant "violated Wisconsin law" by failing to timely file documentation supporting his 1994 survey. But the circuit court found that Dechant was "very credible," stating, "Dechant showed his knowledge, experience, and his memory was good; and he did not have interest in the case." We cannot substitute our own view of witness credibility for that of the trial court. *See **Mullen v. Braatz***, 179 Wis. 2d 749, 756, 508 N.W.2d 446 (Ct. App. 1993) ("[I]t is the trial court's, not this court's function to assess the weight and credibility of testimony.").[9]

¶28 Finally, the Trust implies that the mound and pit does not exist or that Dechant did not accurately testify about how or when he discovered it. To be clear, we discern no basis evident in the record for any conclusion that Dechant misrepresented some fact about the mound and pit. If the Trust means to argue that it was blindsided by the late disclosure of Dechant's testimony about the existence of this monument, then this implication too is not borne out by the record. Rather, in the face of the Trust's trial objection that "[t]his is information that we're hearing for the very first time," the circuit court offered to adjourn the trial or "even add another day down the road if you want" so that Trust

---

[9] The Trust also contends that Dechant was not credible because he contradicted himself at trial about when he last visited the property. According to the Trust, Dechant testified that he visited the property "'early this year, late last year'[,] [but] not more than 20 minutes later … testified that he went to the property 'last Friday.'" Setting aside the fact that we cannot independently judge witness credibility, the Trust's argument appears to be contradicted by the trial testimony, which suggests that Dechant was discussing two distinct locations.

representatives could visit the site and present rebuttal evidence. The court explained that it "want[ed] to hear all the best evidence" and did not "want to be back here in five years with the same issue." The Neighbors assert, and the Trust appears to concede, that the Trust did not take the court up on its offer. Rather, in its briefing to this court, the Trust merely implies that it did not visit the "alleged" mound and pit because that monument did not exist—a circumstance that, if the Trust believed to be true, should have been argued to the circuit court and supported with evidence. We conclude that the circuit court had an ample basis to credit Dechant's testimony on this topic.[10]

## CONCLUSION

¶29    For the reasons stated, we affirm the circuit court's final judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2019-20).

---

[10] The Trust further makes alternative arguments that surveyors in 1851: (1) typically did not use the mound and pit monument; (2) would not have used this monument in the location where this mound and pit was allegedly found; and/or (3) would have made express reference to this monument in their notes if they had set down this monument. Not only does the Trust raise these arguments for the first time in its reply brief, but the Trust appears to be making these arguments *for the first time on appeal*, with reliance on industry sources that do not appear to be testified about or entered into evidence at trial. Accordingly, the Trust has forfeited these arguments. *See State v. Huebner*, 2000 WI 59, ¶¶10-11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727.