BREW, Appellant, vs. NUGENT and another, Respondents.

*September 10—September 29, 1908.*

*Boundaries: Evidence: Weight and sufficiency: Original monuments:*
*Courses and distances: Old fences: Instructions to jury.*

1. In controversies as to the location of corners or boundaries of lots or blocks in platted lands, the original location of monuments must prevail over the courses and distances marked on the plat.
2. If the monuments have disappeared their original location is to be determined by the best evidence available; and in such case location of the disputed points by means of measurements by courses and distances is evidentiary only, and its weight depends upon circumstances.
3. Where the original markings of a block had been removed many years before the controversy as to the south boundary line of a lot arose, evidence of the construction of a fence designed to be on the north line of the lot so soon after the original survey as to render it probable that the monuments were then in place or their location readily ascertainable, and evidence of acquiescence in the location of such fence for some thirty or forty years, was competent and, with other evidence, was sufficient to warrant the conclusion that the fence was properly placed, notwithstanding evidence of a surveyor to the contrary based on measurements from supposedly original monuments in other blocks.
4. Instructions to the jury in such case directing them to give primary and controlling evidentiary effect to the old fence line if they were satisfied that when built it accorded with the original survey, and calling the jury's attention to the undisputed facts and the testimony on the subject, are *held* not to have given undue significance to the old fence line.

APPEAL from a judgment of the circuit court for Crawford county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Ejectment to recover a strip of land two feet on the east side, seven feet on the west side, and 150 feet long as a part of lot 12 and the north one-third of lot 17, block 11, of the Union plat of Prairie du Chien. The dispute was as to the location of the south boundary line of lot 12 and north one-third of lot 17.

There was evidence to this effect: A fence, built about the year 1863, displacing a fence previously built, was designed to be located on the north line of lots 12 and 17. None of the original monuments placed to mark the corners of block 11 had existed for many years before the controversy arose. A fence was erected in 1884 fifty feet south of the north fence, and the two fences were regarded by all parties concerned from the time they were built till about the time of the commencement of the action as marking the north and south boundary of lot 12 and the north one-third of lot 17. There was no proof as to whether the fence displaced as aforesaid was built before or after the platting of the land, which occurred in 1856, and no proof as to what efforts the person who built the fence in 1863 made to locate it, though he testified that he built it on the line as near as he could. The general effect of the evidence was that if the fence erected in 1863 was properly placed, the disputed premises were south of the south boundary of plaintiff's land and within the boundaries of defendant's land. Measurements made by a competent surveyor, from monuments supposed by him to be originals set to mark the corners of other blocks than the one in question, located the north line of plaintiff's premises sufficiently south of the fence line of 1863 to show that the south line of such premises was south of the strip of land in dispute and thus indicate that such strip was the property of the plaintiff. There was evidence of some cir-

cumstances corroborative of the claim that the 1863 fence
was correctly located, as well as evidence of circumstances to
the contrary.    The cause was submitted to the jury so as to
turn on whether the old 1863 fence was, correctly placed or
not.    The verdict was in favor of the defendant and judg-
ment was rendered accordingly.

*Alexander Athey,* for the appellant.

*J. P. Evans,* for the respondent.

MARSHALL, J.    The following propositions are affirmed
and submitted by appellant's counsel as grounds for a rever-
sal: (1) The verdict and finding that the fence as con-
structed for the north boundary of lots 12 and 17 some
thirty or forty years before the controversy arose was
properly placed is not supported by any credible evidence.
(2) The court in instructing the jury gave prejudicial sig-
nificance, as evidence, to the location and maintenance of the
fence referred to.    We will consider such propositions
briefly.

It is the settled law that in controversies as to the proper
locations of corners or boundaries of lots or blocks in platted
lands the original location of monuments must prevail, re-
gardless of whether the same coincide with the courses and
distances laid down on the plat, and that in determining such
locations if such monuments have disappeared they must be
established by the best evidence the nature of the situation
is susceptible of.    So, in such circumstances, where careful
measurements by courses and distances would presently lo-
cate the disputed points is not controlling.    It is evidentiary
only, and of controlling or little or no weight according to
circumstances.    *Nys v. Biemeret,* 44 Wis. 104; *Lampe v.
Kennedy,* 49 Wis. 601, 6 N. W. 311; *Racine v. J. I. Case P.
Co.* 56 Wis. 539, 14 N. W. 599; *Racine v. Emerson,* 85 Wis.
80, 55 N. W. 177; *Madison v. Mayers,* 97 Wis. 399, 73 N.
W. 43; *Galesville v. Parker,* 107 Wis. 363, 83 N. W. 646;
*Smith v. Beloit,* 122 Wis. 396, 100 N. W. 877; *Pereles v.*

*Gross,* 126 Wis. 122, 105 N. W. 217. Failure to fully appreciate the effect of such decisions might well lead one who relies on mere measurements from monuments supposed to have been set in making the original survey to mark corners of lots or blocks other than the ones in question, to lose patience, as counsel for appellant seems to have done, because of evidentiary effect inconsistent therewith being given to the location of ancient fences and long-continued occupation with reference thereto and other circumstances.

The original markings of the block in question having been removed, as they unquestionably were, many years before the controversy arose, the evidence as to the construction of the fence designed to be on the north line of lots 12 and 17 at a time so near that of the original survey as to render it quite probable that they were then in place, or their location readily ascertainable by a person of ordinary intelligence and experience, and the evidence of acquiescence in the location of such fence for some thirty or forty years, was competent, and at least with other evidence offered and received, particularly evidence that a stone existed at the easterly end of such fence some years after it was constructed, which people regarded as a landmark, was sufficient to warrant the conclusion that such old fence was properly placed and the disputed boundary fifty feet south of it, notwithstanding the very positive evidence of the surveyor, who, by his measurements from monuments located some distance from the vicinity of the lost corner, supposed by him to be monuments set in making the original survey, supported appellant's contention. In such a case such circumstantial evidence may have so much greater probative force than mere measurements by courses and distances as to prevail over the latter as matter of law, as indicated in some of the cases cited.

What has been said perhaps sufficiently answers the contention of counsel that the court gave unwarranted significance to the circumstances referred to. The jury were

merely informed, as the fact was, and is not disputed by counsel, that, if the ancient fence when built was correctly placed with reference to the original monuments marking the north boundary of the block in question, then the line and corner so indicated should prevail over the one indicated by the surveyor by measurements from distant monuments supposed to have been placed to mark the corners of other blocks. That is, under the circumstances, primary and controlling evidentiary effect was directed to be given to the old fence line, in case the jury became satisfied by a preponderance of the evidence that when the fence was constructed it accorded with the original monuments set on such line; otherwise primary and controlling effect was directed to be given to the measurements made by the surveyor, the attention of the jury being called to the undisputed fact that the fence was constructed so soon after the land was platted as to render it reasonable to suppose that some of the monuments indicating the true line were still in place, but calling attention to the circumstance that the person who built the fence merely testified that he ascertained the line as near as he could, not being interrogated on either side as to what steps he took in that regard.

We are unable to discover that the court gave the undue significance to the old fence line claimed by counsel. It was fairly left to the jury to determine from the whole evidence whether the fence was built so as to accord with the original survey, with instructions that, if they determined it was, from a preponderance of the evidence, the finding would be controlling, since the disputed strip was by the uncontroverted evidence on defendant's side of a line located at the proper distance from such old fence line. That was certainly correct, and the fact that the jury were, with considerable particularity, instructed in that regard, so as to leave no room for them to proceed on any false theory, is commendable rather than subject to criticism.

*By the Court.*—The judgment is affirmed.