Ross and wife, Respondents, vs. SEVERANCE and wife, Appellants.

*March 5—April 2, 1929.*

The cause was submitted for the appellants on the brief of *Kuehnl & Malloy* of Kenosha, and for the respondents on that of *L. E. Vaudreuil* of Kenosha.

CROWNHART, J. The David G. Janes Company, a corporation, the owner of fifty-one acres of land in the northwest quarter of section 8, township 2 north, of range 23 east, Kenosha county, Wisconsin, in 1913 had the property surveyed and a plan or plat made of it, dividing it into parcels. The land was bounded on the west by the right of way of the Chicago & Northwestern Railway Company, and on the east by Lake Michigan. A highway ran across the land from the south in a northeasterly direction. The highway

was located about one third the distance from the lake shore to the railroad right of way. The parcels, as indicated on the plat, were 174.28 feet in width at the railroad right of way, and 160 feet in width at the highway, and extending from the right of way to the lake shore. The method of laying out this plat, according to the testimony, is somewhat indefinite, but evidently the surveyor took the outside measurements of the whole tract and then subdivided on the plat by drawing boundary lines thereon. This plat does not appear to have been recorded, and parcels of land as thereon indicated were thereafter sold by the David G. Janes Company to various purchasers by metes and bounds. The plat was used only to indicate in a general way the location of the land. The descriptions by metes and bounds all started from a point in the center of the highway where the east-and-west quarter-line crossed the highway. The surveyor placed iron stakes at the corners of each parcel of land, as indicated by the lines on the plat, on both sides of the highway. The plaintiffs purchased their parcel of land in 1924 without looking at the land to determine its location, and thereafter procured a survey of the premises by a surveyor named O'Brien. This survey located the northerly line 11 feet at the highway and 13.3 feet at the lake front, north of the line indicated on the plat. Also, plaintiffs had a second survey made by a surveyor named Zander, whose survey coincided exactly with that of O'Brien. Zander testified for the plaintiffs on the trial, and upon his testimony it appears that he located the quarter-post by the usual method, and dug down in the ground and found in that place an iron pipe, which evidently was set there in a former survey. He then located the plat in the center of the highway where the south line of the quarter-section crossed the highway, by projecting the line from a quarter-post.

Assuming that Mr. Zander properly located the quarter-post and projected the line therefrom across the highway, then the description by metes and bounds of the plaintiffs'

property checks accurately in his survey with the findings of the court.

The defendants, in their behalf, produced the witness Robinson, who was the county surveyor and who had made a survey of the property. Robinson's survey checks exactly with Zander's survey and O'Brien's survey; hence, without question, the evidence is sufficient to justify the findings of the court.

But the defendants contend that even though the survey be accurate, as the court found, still there was a practical location of the properties on the plat, and of the properties of the plaintiffs and defendants, which should control.

It appears that all these parcels of land within the plan or plat had been sold, most of them were occupied, and in some cases valuable improvements have been placed upon the property by buildings and the planting of shrubbery, which will result in considerable hardship to various owners if the plaintiffs' contention prevails as to location of their property. But the plaintiffs did nothing in the way of acquiescence or agreement which induced any of these parties to rely upon their locations. None of these parties procured a survey of their lands before improving them. The plaintiffs, however, took the precaution to have their land surveyed and re-surveyed in order to properly locate their land according to the description in the deed. Under the circumstances we do not think the rules of practical location can be applied.

The rules as to practical location are stated in 9 Corp. Jur. p. 242, as follows:

"To constitute a practical location of a line, the mutual act and acquiescence of the parties is required. One adjoining owner cannot settle the location of the line without the consent of the other. The practical location is but an actual designation by the parties on the ground of the monuments and bounds called for by their deeds. It is, in fact, merely the result of an agreement between the parties shown by the location of monuments and marks on the ground. 'In legal theory the doctrine of a practical location is equitable in its

nature, arising from the principle of estoppel *in pais,* the fundamental conception of which is the doing of an act by a party in interest, or his acquiescence in the doing of an act by another which would naturally lead to the inference of the existence of a status or the establishment of a condition upon which either party in interest may act to his prejudice if the act be disavowed. It is used to preclude a party from maintaining by evidence that which he had before expressly or tacitly denied; or disproving that which he has before expressly or tacitly admitted, when the other party has acted upon the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive.' "

The same rules of practical location have been followed in this state. *Lundgreen v. Stratton,* 73 Wis. 659, 663, 41 N. W. 1012. Also see *Litel v. First Nat. Bank,* 196 Wis. 625, 220 N. W. 651.

*By the Court.*—The judgment of the circuit court is affirmed.