Daniel R. NORTHROP, Plaintiff,

Kay M. BOERST and Peter S. Boerst,
Plaintiffs-Appellants-Petitioners,

v.

Betty OPPERMAN, Connie Henn, Floyd Opperman,
Keith Opperman, Mark Henn and
Pamela Opperman, Defendants-Respondents.

Supreme Court

*No. 09AP1559. Oral argument December 1, 2010.
—Decided February 3, 2011.*

2011 WI 5

(Also reported in 795 N.W.2d 719.)

For the plaintiff-appellant-petitioner there were briefs and oral argument by *Vicki Zick, Zick & Weber Law Offices, LLP,* Johnson Creek.

For the defendant-respondent there was a brief and oral argument by *Joe Thrasher, Thrasher, Doyle, Pelish & Franti,* Rice Lake.

An amicus curiae brief was filed on behalf of the Wisconsin REALTORS Association by *Thomas D. Larson.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals,[1] which affirmed in part and reversed in part the judgment of the Circuit Court for Ashland County, John P. Anderson, Judge. Kay and Peter Boerst seek review of that part of the court of appeals decision affirming the circuit court's determination that the boundary line between their property and the property of Betty and Floyd Opperman is the center line of Henn Road.[2] We affirm this part of the decision of the court of appeals.

¶ 2. The Boersts own a parcel of land in Section 9 that is adjacent to and east of a parcel of land in Section 8 owned by the Oppermans. The boundary line in dispute in this action is the western boundary of the Boersts' property in Section 9 and the eastern boundary of the Oppermans' property in Section 8.

---

[1] *Northrop v. Opperman,* 2010 WI App 80, 325 Wis. 2d 445, 784 N.W.2d 736.

[2] The court of appeals reversed that part of the circuit court's judgment relating to obliteration of the section corner and "suggesting Henn Road is the section boundary." *Northrop,* 325 Wis. 2d 445, ¶ 15. Neither party has sought review of this part of the decision of the court of appeals.

As the court of appeals explained, the suit was initiated by Daniel Northrop, who owns the parcel immediately to the north of the Boersts. Northrop sued the owners of the parcel north of the parcel owned by Betty and Floyd Opperman. Only the Boersts appealed the circuit court's judgment to the court of appeals and sought review in this court. *Northrop,* 325 Wis. 2d 445, ¶ 4 n.1.

¶ 3. The circuit court determined that the center line of Henn Road (which runs north and south) is the boundary line between the Boersts' and the Oppermans' properties. The court of appeals affirmed this part of the circuit court's judgment.[3]

¶ 4. The Boersts present the issue as "whether the doctrine of acquiescence allows mistaken boundaries to become legal boundaries after twenty years of mistaken belief has passed." This presentation of the issue is driven by the circuit court's and the court of appeals' use of the word "acquiescence" in their analyses. Our review is not constrained by this statement of the issue. The issue before the court is whether the court of appeals erred in holding that the circuit court correctly determined that the center line of Henn Road is the boundary line separating the parcel of land owned by the Boersts from the parcel of land owned by the Oppermans.

¶ 5. We conclude that in determining the boundary line by evaluating the evidence of common usage and acquiescence and not by using the legal doctrine of acquiescence, the circuit court applied the correct legal analysis in the present case. After finding that the actual boundary line[4] could not be determined from the deed and original monuments or markers, the circuit court evaluated the evidence and established the boundary line based upon the best evidence available. There are sufficient facts in the record upon which the circuit court based its findings that the actual boundary line could not be determined from the deed and the

---

[3] *Northrop,* 325 Wis. 2d 445, ¶ 12.

[4] The actual or true boundary line ordinarily refers to the line that was fixed by the original survey or plat. *See, e.g., City of Racine v. Emerson,* 85 Wis. 80, 86, 55 N.W. 177 (1893).

original monument or markers and that the best evidence supports the center line of Henn Road as the boundary line separating the parcels owned by the parties to this review. The best evidence was not the successive surveys but common usage and acquiescence.

I

██

¶ 6.   Resolution of a boundary dispute is ordinarily fact-driven, and the present case is no exception. The record in this case reflects a rich history of over 120 years involving the lands in question in Sections 8 and 9.

¶ 7.   We begin the history in July 9, 1886, with the original survey of Henn Road. The Butternut Town Board laid out a public highway, Henn Road, described as beginning at the "southwest corner of section 9 (nine) thence north on the sec line to the northwest corner of section 9 (nine)." Henn Road then continues west from the northerly end of the north/south part of the road. Although the Road presently curves, apparently it was originally a right-angle intersection with the corner common to Sections 4, 5, 8, and 9 believed to be at the intersection of the two parts of the Road.

¶ 8.   In 1907, the Town of Butternut contracted with Ashland County Surveyor George Parker to run survey lines according to the original government survey or, if the original landmarks were destroyed or lost, to reestablish those corners under the general rules adopted by the government in the survey of public lands. Parker submitted a survey in 1908. Shortly thereafter the Town Board directed Parker to complete the survey and finish setting the monuments as contracted.

¶ 9. As a result of the 1908 Parker survey, litigation ensued between owners of parcels in Section 8 and Section 5. Section 5 borders Section 8 to the north, and Sections 5, 8, and 9 share (along with section 4) a common corner. In that litigation it was alleged that the 1908 survey moved the boundary line between Sections 8 and 5 south of the east/west part of Henn Road. The jury returned a verdict determining that the owner of parcels in Section 8 owned the land up to the center line of the east/west part of Henn Road.

¶ 10. In 1911 another survey by Parker was presented to the Town Board. The Town Board records indicate some wrangling over the acceptance of the 1911 survey, but in 1912 a certificate of survey bearing Parker's name was recorded. The 1912 survey contains different bearings than the 1908 survey submitted by Parker for the boundary line between Sections 8 and 9.

¶ 11. In 1917 the same owner of parcels in Section 8 again initiated litigation to resolve a boundary dispute. In the 1917 action, the owner of parcels in Section 8 claimed title to portions of land north of the east/west part of Henn Road. He based his claim on the 1912 Parker survey, arguing that the boundary line between Sections 8 and 5 was north of Henn Road. The owner of parcels in Section 5 alleged that the road was accepted by everyone as the boundary line between Sections 5 and 8 and that people living along the road, relying upon that line, had made large and extensive improvements on the land.

¶ 12. Based on the evidence introduced at trial, the parties stipulated that the common corner of Sections 4, 5, 8, and 9 in Township 41 North, Range 1 West, Ashland County, Wisconsin, is at the intersection of the center line of Henn Road, setting Henn Road as the boundary between Sections 5 and 8.

¶ 13. For 88 years after this stipulation, the record supports the proposition that Henn Road was honored as the boundary line between Sections 5 and 8, and the original intersection of Henn Road was honored as the common corner.

¶ 14. One example of reliance by the government and property owners upon that common corner can be found in the 1935 conveyance of land from the then-owners of parcels in Section 8 to the State of Wisconsin for the purposes of building a new Highway 13 through Section 8 and the plat of the right of way required. The conveyance described the land conveyed by reference to the northeast corner of Section 8, and the Plat of the Right of Way Required shows the common corner of Sections 4, 5, 8, and 9 at the original intersection of the north/south and east/west parts of Henn Road.[5]

¶ 15. The "boundary peace" was disturbed in 2005 when a surveyor found a concrete monument in the swamp northwest of the original intersection of Henn Road and notified the county surveyor. The county surveyor accepted the concrete monument as a section corner under the 1912 survey and recorded a corner restoration sheet (tie sheet) for the corner common to Sections 4, 5, 8, and 9. According to the 2005 survey,

---

[5] The 1935 conveyance for Highway 13 described the real estate conveyed as follows:

All that part of a strip or parcel of land lying within the Southeast Quarter (SE 1/4) of the Northeast Quarter (NE 1/4) and the West Half (W 1/2) of the Northeast Quarter (NE 1/4) of Section 8, Township 41 North, Range 1 West, a reference line to which is more fully described as follows:

Beginning at a point on the North section line and 2594.1 ft. west of the Northeast corner of Section 8 aforesaid; thence southeasterly at an angle of 48 degrees 19 minutes with said North section line for a distance of 3615.6 ft. to an intersection with the East and West one-quarter line of Section 8 aforesaid.

293

north/south Henn Road actually lies entirely in Section 9, approximately 600 feet east of Section 8, giving the Boersts additional acreage and the Oppermans less acreage.

¶ 16.   The Oppermans, through an independent surveyor, prepared an alternative tie sheet for the common corner, setting the original intersection of Henn Road as the common corner. The county surveyor did not accept this alternative tie sheet.

¶ 17.   The 2005 survey caused significant disruption and confusion for landowners in the area.[6] This litigation ensued.

## II

¶ 18.   The Boersts commenced this action, asking the circuit court to declare them the rightful owners of land lying west of the north/south Henn Road. A one-day trial ensued consisting almost entirely of expert testimony concerning the location of the corner common to Sections 4, 5, 8, and 9.

¶ 19.   Pertinent to our analysis, the circuit court made the following findings of fact:

• The original section corner monument between Sections 4, 5, 8, and 9 in Township 41 North, Range 1 West, Ashland County, Wisconsin no longer exists.

---

[6] Letter from Ashland County Highway Department to affected property owners (Oct. 3, 2006):

It has come to the attention of Ashland County, that a serious mistake has been discovered with respect to property boundaries in Sections 4, 5, 6, 7, 8 and 9, Township 41 North, Range 1 W, Town of Chippewa, Ashland County. For many years, property has been utilized and occupied based on assumptions that the Town Roads fell on the Section lines when in-fact, the Section Lines and Sections Corners are up to 100 to 400 feet off of the road centerline. This discrepancy has already led to conflicts with neighboring property owners.

- No competent evidence is before the court to determine where the original section corner monument was originally placed.

- No clear and convincing evidence exists that the resetting of the corners in the 1912 Parker survey (upon which the 2005 tie sheet is based) was correct.

- Neither party has shown by clear and convincing evidence where the actual boundary line exists.

¶ 20. The circuit court further concluded that the original boundary line between Sections 8 and 9 cannot be determined solely by the descriptions in the deeds.

¶ 21. The deed to the Boersts' parcel describes the real estate as "The Southwest one-fourth (1/4) of the Northwest one-fourth (1/4) of Section Nine (9), Township Forty-one (41) North, Range One (1) West, Town of Chippewa, County of Ashland, Wisconsin." The deed to the Oppermans' parcel describes the real estate as "The Southeast Quarter of the Northeast Quarter, Section 8, Township 41 North, of Range 1 West . . . ."

¶ 22. Although the descriptions in the deeds are unambiguous on their face, the real estate described cannot be located on the ground because, as the circuit court explained, "the corner of Sections 4,[7] 5, 8, and 9 cannot be located." Thus it is not possible using the deed descriptions and nothing more to locate on the ground the southwest one-fourth of the northwest one-fourth of Section 9 and the southeast quarter of the northeast quarter of Section 8.[8]

---

[7] Section 4 is north of section 9.

[8] A description of a parcel as a quarter section in one deed may be ambiguous although a reference to a different quarter section in another deed may be unambiguous. Likewise, a statute that is unambiguous in one context may be ambiguous

¶ 23. The circuit court therefore looked to extrinsic evidence to determine the boundary line and concluded that "the best evidence available are the lines of occupation and possession" and that the landowners and the County have used the center line of Henn Road as the boundary line between the properties at issue for "almost all of the twentieth century and up until the year 2005." Accordingly, the circuit court concluded that "[i]t is the judgment of this court that a longstanding common usage and acquiescence to ownership and possession to real estate has occurred in the area of the Henn Road in Ashland County near the common sections of 4, 5, 8, and 9 [and] [t]he centerline of the existing Henn Road is determined to be the boundary line between the property owners in this case." For the reasons set forth, we agree with the circuit court's determination of the location of the boundary line at issue based on the evidence in this case, not based on the legal doctrine of acquiescence.

¶ 24. The court of appeals devoted its decision predominantly to rejecting the Boersts' argument (which relied on *Buza v. Wojtalewicz,* 48 Wis. 2d 557, 180 N.W.2d 556 (1970)) that the doctrine of acquiescence is not applicable in the present case because the

in another context. *Teschendorf v. State Farm Ins. Cos.,* 2006 WI 89, ¶ 20, 293 Wis. 2d 123, 717 N.W.2d 258. In contrast with the present case, in *Chandelle Enterprises, LLC v. XLNT Dairy Farm, Inc.,* 2005 WI App 110, ¶¶ 12–16, 282 Wis. 2d 806, 699 N.W.2d 241, the court of appeals concluded that under the facts of that case the description of the property as a quarter section was not ambiguous. In *Chandelle,* the court of appeals did not look to extrinsic evidence outside of the deeds because "the fact that a surveyor, using the deeds, has established what the parties agree is the true boundary line demonstrates that the descriptions were sufficiently clear and definite." *Chandelle,* 282 Wis. 2d 806, ¶ 16.

doctrine applies only to boundary disputes arising from ambiguous deeds. The court of appeals concluded that *Buza* does not hold that an unambiguous deed trumps mistaken boundary lines after the statutory period has run.

## III

¶ 25. The Boersts dispute the court of appeals' affirmance of the circuit court's judgment that the center line of Henn Road marks the boundary line.

¶ 26. Wisconsin has a long line of cases settling boundary disputes. The case law demonstrates that the resolution of boundary disputes depends on fact-specific analyses. The court has stated that "[a]s is usual, boundary disputes are generally between friends who become enemies and the facts are detailed and somewhat confusing, all of which give rise to the conflicting principles of law."[9] These conflicting principles of law are not unique to Wisconsin law.

¶ 27. The parties and the amicus curiae brief of the Wisconsin Realtors Association attempt to categorize a multitude of Wisconsin boundary dispute cases in an effort to establish principles of law that can be applied in the present case. The parties do not necessarily agree on the categorization of the cases or the principles of law derived from the cases. Indeed, the cases cannot easily and consistently be divided into doctrinal categories, and doctrinal categories significantly overlap.[10]

---

[9] *Beduhn v. Kolar,* 56 Wis. 2d 471, 473, 202 N.W.2d 272 (1973).

[10] "A boundary line different from that described in the respective deeds of adjoining landowners may be established under the respective principles of adverse possession, prescrip-

¶ 28. One "category" of cases is adverse possession, now governed by Wis. Stat. § 893.25 (2007–08).[11] As both parties clearly state, in their briefs and at oral argument, neither party is asserting adverse possession in this case.[12] We therefore do not review the present case as an adverse possession case.

¶ 29. Other formulations of categories of cases include cases in which adjoining owners dispute the location of the boundary line, subsequently establish a boundary line by mutual agreement, and acquiesce in its location;[13] cases in which adjoining owners take conveyances from a common grantor that describe the premises conveyed by lot numbers but the grantees have purchased with reference to a boundary line then marked on the ground;[14] cases in which adjacent property owners agree to have the land surveyed to build a fence, build a fence in reliance on the survey, and acquiesce to the boundary;[15] cases in which the description of the premises in a deed is definite, certain, and unambiguous and extrinsic evidence is inadmissible to show acquiescence to a boundary line in a different

tion, agreement, practical location, acquiescence or estoppel. Each of these has a different factual background though too often they are confused by the courts." 6 John S. Grimes, *Thompson on Real Property* § 3034, at 506 (1962).

[11] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[12] The amicus argued that the present case is an adverse possession case.

[13] *See, e.g., Pickett v. Nelson,* 71 Wis. 542, 546, 37 N.W. 836 (1888).

[14] *See, e.g., Thiel v. Damrau,* 268 Wis. 76, 81, 66 N.W.2d 747 (1954).

[15] *See, e.g., Nagel v. Philipsen,* 4 Wis. 2d 104, 110, 90 N.W.2d 151 (1958).

location;[16] cases in which a survey is in conflict with a longstanding fence line;[17] and estoppel cases.[18] These formulations or categories tend to overlap and are not used in a consistent fashion in the case law.[19]

¶ 30. No attempt is made to include herein an exhaustive list of the formulations, terminology, or categories used by this court in the numerous boundary dispute cases. Instead we have included a number of the more commonly used formulations to illustrate the language used in our case law to resolve boundary disputes and the historic inability of the court to consistently classify boundary disputes into doctrinal categories.

[16] *See, e.g., Grosshans v. Rueping,* 36 Wis. 2d 519, 528, 153 N.W.2d 619 (1967) (quoting *Elofrson v. Lindsay,* 90 Wis. 203, 205, 63 N.W. 89 (1895)); *Elofrson v. Lindsay,* 90 Wis. 203, 205, 63 N.W. 89 (1895) ("It is also well settled that, where the description of the premises in a deed is definite, certain, and unambiguous, extrinsic evidence to show acquiescence in a different location is inadmissible, unless such practical location is followed by an adverse possession for such a length of time as to bar an action for the recovery of the lands.").

[17] *See, e.g., City of Racine v. Emerson,* 85 Wis. 80, 55 N.W. 177 (1893).

[18] *See, e.g., Gove v. White,* 23 Wis. 282 (1868).

For discussions of boundary by estoppel, see Jacqueline P. Hand & James Charles Smith, *Neighboring Property Owners* § 6.11 (1988); *Clark on Surveying and Boundaries* § 20.04 (7th ed. 1998).

[19] For instance, in *Buza v. Wojtalewicz,* 48 Wis. 2d 557, 567, 180 N.W.2d 556 (1970), the court stated that "insofar as boundary disputes are concerned, we are unable to discern from the cases any functional differences between acquiescence and estoppel. These two terms do not represent separate doctrines or concepts. Acquiescence is a condition or fact which, if proven, results in an estoppel against the party who has acquiesced."

¶ 31. In the present review, the parties focus on the word "acquiescence," used by the circuit court and court of appeals. The word "acquiescence" has been used in numerous Wisconsin cases, not always consistently.

¶ 32. Sometimes the word is seemingly used to mean that the conduct of the parties in acquiescing, that is, agreeing to or complying with, a boundary line constitutes the best evidence of the boundary line. The word "acquiescence" is thus used to mean that the conduct of neighbors is evidence of a boundary line.

¶ 33. Other times the word "acquiescence" is seemingly used in the case law to refer to a legal doctrine, namely boundary by acquiescence or agreement.[20] The doctrine of acquiescence has also sometimes been referred to as "rules as to practical location."[21]

¶ 34. Citing *Pickett v. Nelson*, 71 Wis. 542, 546, 37 N.W. 836 (1888), the Boersts assert that the doctrine of

[20] For discussions of the two separate and distinct uses of the word "acquiescence," see Annotation, *Establishment of Boundary Line by Oral Agreement or Acquiescence*, 69 A.L.R. 1430, § IV(a), (i) (1930 & Cumulative Supp.); James O. Pearson, Annotation, *Fence as Factor in Fixing Location of Boundary Line*, 7 A.L.R. 4th 53, § 2.1 (1981 & Cumulative Supp.).

For discussions of the doctrine of boundary by acquiescence, see Hand & Smith, *supra* note 18, § 6.10; *Clark on Surveying and Boundaries* § 20.03 (7th ed. 1998); Lawrence Berger, *Unification of the Doctrines of Adverse Possession and Practical Location in the Establishment of Boundaries*, 78 Neb. L. Rev. 1, 11–15.

[21] *Ross v. Severance*, 198 Wis. 489, 491–92, 224 N.W. 711 (1929) (quoting 9 Corp. Jur. 242); *Lundgreen v. Stratton*, 73 Wis. 659, 663, 41 N.W. 1012 (1889).

For a discussion of the doctrine of practical location of boundaries, see *Clark on Surveying and Boundaries* § 20.05 (7th ed. 1998).

acquiescence applies only when a party proves (1) genuine uncertainty about the boundary line that cannot be resolved; (2) a dispute or controversy concerning the line; and (3) an agreement that resolves the dispute.

¶ 35.  The circuit court in the present case seemed to use the word "acquiescence" in the evidentiary sense as well as in reference to the legal doctrine of acquiescence. The circuit court used the word "acquiescence" in the evidentiary sense, concluding that it is "necessary to look to extrinsic evidence [to determine the boundary line] and this court believes the best evidence available are the lines of occupation and possession. . . . [L]ongstanding common usage and acquiescence to ownership and possession to real estate have occurred in the area of the Henn Road in Ashland County, near the common sections of 4, 5, 8, and 9."

¶ 36.  The circuit court appears to have also concluded that the legal doctrine of acquiescence is applicable in the present case because the boundary line is in dispute and cannot be determined by the legal description in the deed.

¶ 37.  In contrast, the Boersts contend that the legal doctrine of acquiescence does not apply in the present case. The Boersts contend that the deed is unambiguous and therefore extrinsic evidence should not have been used to determine the boundary line.[22]

---

[22] In *Chandelle Enterprises, LLC v. XLNT Dairy Farm, Inc.,* 2005 WI App 110, ¶ 16, 282 Wis. 2d 806, 699 N.W.2d 241, the court of appeals concluded that "because, in this case at least, the description by quarter section is not ambiguous, the doctrine of acquiescence does not apply."

If parties acquiesce in "a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and equity as a mistake and neither party is estopped from

¶ 38. The case law relating to the doctrine of acquiescence is not consistently stated or applied.[23] The concept of acquiescence in the evidentiary sense is often used in cases resolving conflicts between a landmark and a survey. We therefore turn to this line of cases.

¶ 39. After reviewing the case law, we conclude that the instant case most closely approximates and is governed by the principles set forth in boundary dispute cases in which a survey is in conflict with a longstanding landmark. In these cases, the survey raises questions about the accuracy of a landmark that has generally been accepted by property owners as the boundary line for a substantial period of time.

---

claiming to the true line." *Hartung v. Witte,* 59 Wis. 285, 289, 18 N.W. 175 (1884) (*quoted with approval in Chandelle,* 282 Wis. 2d 806, ¶ 11).

*See also* cases cited in note 16, *supra.*

[23] Citing *Buza v. Wojtalewicz,* 48 Wis. 2d 557, 563, 180 N.W.2d 556 (1970), the court of appeals in the present case viewed the doctrine of acquiescence as a court-adopted doctrine supplementing the doctrine of adverse possession. According to the court of appeals, adverse or hostile intent is a prerequisite of adverse possession, and the doctrine of acquiescence substitutes mutual acquiescence for adverse or hostile intent. *Northrup,* 325 Wis. 2d 445, ¶ 9.

Several cases have recognized, however, that hostile intent "does not mean a deliberate, willful, unfriendly animus. If the elements of open, notorious, continuous and exclusive possession are satisfied, the law presumes the element of hostile intent." *Burkhardt v. Smith,* 17 Wis. 2d 132, 139, 115 N.W.2d 540 (1962).

In *Peter H. & Barbara Steuck Living Trust v. Easley,* 2010 WI App 74, ¶ 34, 325 Wis. 2d 455, 785 N.W.2d 631, the court of appeals declared that "it is not clear whether the doctrine of acquiescence remains a distinct means of proving adverse possession when, as here, there is no issue concerning the twenty-year time period."

¶ 40. Cases involving this type of dispute ordinarily have involved a conflict between a survey and a longstanding fence line. The applicable principles in these cases do not, however, depend on the fact that the landmark is a fence. A fence in these cases is analogous to any landmark allegedly marking a boundary between adjoining landowners.[24]

## IV

¶ 41. We turn to the survey/fence cases for guidance in resolving the boundary dispute in the present case.

██

¶ 42. In the survey/fence cases, a circuit court first determines whether the boundary line can be determined from the deed and original monuments or markers. If the boundary line cannot be so determined, the circuit court looks to the best evidence of the boundary line. The circuit court's determination of the best evidence locating the boundary line in the

---

[24] *See, e.g., Brew v. Nugent,* 136 Wis. 336, 339, 117 N.W. 813 (1908) (evidence of acquiescence in the location of a fence since torn down along with "evidence that a stone existed at the easterly end of such fence some years after it was constructed, which people regarded as a landmark, was sufficient to warrant the conclusion that such old fence was properly placed and the disputed boundary 50 feet south of it, notwithstanding the very positive evidence of the surveyor . . . ."; James O. Pearson, Annotation, *Fence as Factor in Fixing Location of Boundary Line,* 7 A.L.R. 4th 53, § 1[a] (1981 & Cumulative Supp.) ("Since the applicable principles do not vary depending on the nature of the barrier claimed to have become a boundary, the term 'fence' is used generically to denote all barriers allegedly marking boundaries between adjoining landowners, without regard to whether the barrier was man-made or natural.").

survey/fence cases is essentially a finding of fact.[25] An appellate court does not set aside findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2).[26]

¶ 43. The survey/fence analysis is demonstrated in *Welton v. Poynter,* 96 Wis. 346, 71 N.W. 597 (1897), in which a fence line that existed for 30 years was thought to mark the boundary line. A survey was performed under which the boundary line did not coincide with the fence line. It was not established, however, how the new survey line was located, nor whether any original stakes or monuments were used. The court, faced with choosing between the fence and the survey as the boundary line, relied on evidence of undisputed occupancy rather than the survey. The court was unwilling to disturb the existing understanding of the property owners. The court explained its reasoning as follows:

> [T]he evidence of undisputed occupation and fencing in accordance with [the originally surveyed] line for about 30 years, not only of the piece of land in controversy, but of other parcels of land in that immediate neighborhood, raises a presumption that the line so recognized is the true line . . . . So strong a presumption is thus raised in the present case that we do not regard it as overcome or seriously weakened by the simple fact that upon a resurvey, based upon no original monument, another line several rods distant is established.

*Welton,* 96 Wis. at 347.

---

[25] *Nagel v. Philipsen,* 4 Wis. 2d 104, 107, 90 N.W.2d 151 (1958). *See also Okemo Mountain, Inc. v. Lysobey,* 883 A.2d 757, 760 (Vt. 2005).

[26] The clearly erroneous standard of review for findings of fact made by a circuit court is essentially the same as the great weight and clear preponderance test. *State v. Hambly,* 2008 WI 10, ¶ 16 n.7, 307 Wis. 2d 98, 745 N.W.2d 48.

¶ 44. In *Brew v. Nugent,* 136 Wis. 336, 117 N.W. 813 (1908), the court was again asked to determine whether a longstanding fence line or a survey should be used to establish the boundary line. The court determined, based on what it viewed as settled law, that the original location of monuments must always prevail, but that when those monuments have disappeared "they must be established by the best evidence the nature of the situation is susceptible of." *Brew,* 136 Wis. at 338. The court concluded that extrinsic evidence, such as an old fence, may have so much greater probative force than more recent surveying measurements "as to prevail over the latter as a matter of law . . . ." *Brew,* 136 Wis. at 339.

¶ 45. A more recent case involving a boundary dispute predicated on the discrepancy between an ancient fence line and a survey supports using an evidentiary analysis. *See Grell v. Ganser,* 255 Wis. 381, 39 N.W.2d 397 (1949).

¶ 46. The court was prescient in *City of Racine v. Emerson,* 85 Wis. 80, 55 N.W. 177 (1893), in providing principles that remain sound more than a century after the decision was written. In that case, a resurvey commissioned by the City of Racine created boundary lines that did not coincide with the defendant's existing fence line, which he alleged was set along the original stakes laying out the street running on the boundary of his property.

■

¶ 47. The *City of Racine* court concluded that the answer to the pertinent question—where is the boundary line?—must be established by the best evidence available. It declared that "monuments set by the original survey in the ground, and named or referred to

305

in the plat, are the highest and best evidence."[27] If there are no such monuments, then stakes set by the surveyor or soon thereafter are the next best evidence.[28] Buildings, fences, and other substantial improvements built according to the stakes laid out while they were present are the next best evidence of the line.[29]

¶ 48. The *City of Racine* court predicted that original monuments will be lost or destroyed and that the time will come when the best evidence to establish property lines may be long continued occupation:

> The time will soon come when [the boundary line] will have been lost by the destruction of all monuments, natural or artificial, and by the death of the old inhabitants. Then resort must be had to evidence of lesser degree to establish ancient boundaries, and long-continued occupation with respect to unchanged lines, and reputation, even, may be the best evidence available.

*City of Racine*, 85 Wis. at 88–89.

█

¶ 49. The time has come in the present case to apply the rule that an ancient fence (or other landmark) may be competent evidence of the location of the boundary when original monuments cannot be found.[30]

---

[27] *City of Racine v. Emerson*, 85 Wis. 80, 86–87, 55 N.W. 177 (1893).

[28] *Id.*

[29] *Id.*

[30] *Nys v. Biemeret*, 44 Wis. 104, 110 (1878) further illustrates this rule that when the actual boundary line cannot be determined, the circuit court must use extrinsic evidence to determine the location of the boundary line: "If original monuments can be found and identified, they will govern. . . . If no certain monuments can be found . . . a lesser degree of testi-

¶ 50. The circuit court made findings of fact that the original section corner monument between Sections 4, 5, 8, and 9 in Township 41 North, Range 1 West, Ashland County, Wisconsin no longer exists; that no competent evidence is before the court to determine where the original section corner monument was originally placed; that no clear and convincing evidence exists that the resetting of the corners in the 1912 Parker survey was correct; that neither party has shown by clear and convincing evidence where the actual boundary line exists. All of these findings of fact are supported by the record.

¶ 51. The Boersts rely upon the 2005 survey (based on a survey performed in 1912) using a corner marker that was found to establish a common corner for Sections 4, 5, 8, and 9. This 2005 survey disrupted the long-honored boundary line in reference to the center line of Henn Road.

¶ 52. Based on these facts, the circuit court properly focused its analysis on what constitutes the best

mony may be resorted to; and long continued occupancy and acquiescence, and even reputation and hearsay as to the boundaries, may have weight."

*See also Wunnicke v. Dederich,* 160 Wis. 462, 467, 152 N.W. 139 (1915) ("Under the repeated decisions of this court the ancient fence lines around this parcel of land, maintained as they were for at least thirty and probably fifty years, should be taken as fixing the correct boundaries of the tract.").

*See also* 10 David A. Thomas ed., *Thompson on Real Property: Second Thomas Edition* § 90.03(a)(7), at 628 (1998) ("Where the exact location of a boundary line is not definitely known, a dispute involving the boundary line must be determined by looking to the conduct of the parties with reference thereto. Thus, long acquiescence by the owners of adjoining lands in the location of the dividing line between their lands may, in effect, establish such line . . . .") (citations omitted).

evidence available to establish the boundary line. The best evidence of the boundary line in the present case is, as the circuit court found, the long occupation of the properties by the parties to the present case, their neighbors and their predecessors in title. According to the record, for more than a century the center line of Henn Road has been honored as the boundary between the properties by not only the parties in this suit (and their predecessors in interest), but also generally throughout the surrounding area and by the government.

¶ 53.  Henn Road is the landmark that was laid out closest in time to the original government survey. The records of the boundary dispute litigation between neighbors owning property in Sections 8 and 5 in 1909 and 1917 (involving the 1912 survey relied upon by the Boersts) provide supporting evidence that Henn Road was reputed to lie on the boundary line and that the center line of Henn Road has been relied upon by the property owners in the area as the boundary line for many, many years. Finally, as stated in *City of Racine,* resurveys may be unreliable as evidence of a boundary line. *City of Racine,* 85 Wis. at 86–87.

¶ 54.  The record supports the circuit court's determination that the center line of Henn Road has been relied upon by the government and private owners alike as the boundary line between sections 8 and 9 in Township 41 North, Range 1 West, Ashland County, Wisconsin. The evidence in the record prior to the events leading to this litigation supports a finding of long-time undisturbed possession of property based upon the center line of Henn Road as the boundary line.

¶ 55.  The court's conclusion in *City of Racine* applies here:  Boundary lines may be established by "practical location and undisturbed possession for a

great many years, and there does not seem to have been any necessity to disturb them at this late day." *City of Racine*, 85 Wis. at 89–90.

¶ 56.   In sum, in determining the boundary line by evaluating the evidence of common usage and acquiescence and not by using the legal doctrine of acquiescence, the circuit court applied the correct legal analysis in the present case. After concluding that the actual boundary line could not be determined from the deed and original monuments or markers, the circuit court evaluated the evidence and established the boundary line based upon the best evidence available. There are sufficient facts in the record upon which the circuit court based its findings that the actual boundary line could not be determined from the deed and the original monument or markers and that the best evidence supports the center line of Henn Road as the boundary line separating the parcels owned by the parties to this action. The best evidence was not the successive surveys but common usage and acquiescence.

*By the Court.*—The decision of the Court of Appeals is affirmed.