**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 26, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP707**

Cir. Ct. No. **2021CV62**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

YGR PROPERTY MANAGEMENT, LLC,

PLAINTIFF-APPELLANT,

V.

SHERMAN J. KNOTT AND SUSAN A. KNOTT,

DEFENDANTS-RESPONDENTS,

V.

SUE A. KEES,

THIRD-PARTY DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. YGR Property Management, LLC and Sue A. Kees appeal a circuit court judgment, entered on summary judgment, in favor of Sherman and Susan Knott that resolved a property boundary-line dispute as well as maintenance responsibilities relative to a recorded easement. We affirm the court's boundary-line determination. We reverse the court's judgment relative to maintenance of the recorded easement, and we remand with directions that the court amend its judgment consistent with this opinion.

¶2 The parties filed cross-motions for summary judgment on the boundary-line dispute and easement maintenance; they also filed a stipulation of facts. We begin with the boundary-line dispute. According to the Knotts' deed, they own an L-shaped property. The "chain of deeds for the YGR property, Kees property, and Knott property" match the boundaries as described in the Knotts' deed. Calumet County land records also recognize the Knotts' L-shaped property, and "Calumet County has taxed the Knotts, YGR, and Kees, as well as their predecessors in interest, in accordance with their land records."

¶3 In 2020, before YGR purchased its property, it retained a surveyor who determined YGR's property boundaries were as indicated by the 1934 Village of Brillion Assessor's Plat. The 1934 assessor's plat depicted the Knotts' property as rectangular-shaped as opposed to L-shaped (removing the upper portion of the L-shape and dividing that portion between YGR's and Kees' property). The parties agree there are unknown, hand-drawn markings on the 1934 assessor's plat "that would make the plat consistent with the boundaries currently shown by Calumet County land records and the metes and bounds description contained in

the Knott deed." Further, "[s]ince the Assessor's Plat was recorded, none of the deeds for the YGR property, Kees property, and the Knott property have utilized the property boundaries detailed in the Assessor's Plat."

¶4 Based on its survey, YGR contacted the Calumet County real property lister and asked her to amend the county's parcel map and all the parties' deeds to make them consistent with the 1934 assessor's plat. The lister refused on the basis that "the deeds of the properties are controlling." YGR then purchased the property, and contrary to the advice of the lister, described its property with reference to the 1934 assessor's plat.

¶5 YGR brought suit against the Knotts, asking the circuit court to award it title to a portion of the upper part of the Knotts' L-shaped property, consistent with the 1934 assessor's plat. Kees was added to the suit as a third-party defendant, and she, also represented by YGR's counsel, counterclaimed for title of the remaining portion of the upper part of the Knotts' L-shaped property, consistent with the 1934 assessor's plat.

¶6 On the boundary-line dispute, the circuit court granted judgment in favor of the Knotts. The court first determined that the hand-drawn markings on the 1934 assessor's plat (which were consistent with the Knotts' L-shaped parcel) rendered the document ambiguous. The court then looked at extrinsic evidence. It observed that after the assessor's plat was recorded, the owners continued to convey the properties without reference to the plat, the subsequent deeds reflect that the Knotts' property is L-shaped, Calumet County's land system reflects the Knotts' L-shaped property, and the Knotts have been assessed and paid taxes based on the L-shaped property.

3

¶7 On appeal, YGR and Kees argue the circuit court erred by disregarding the 1934 assessor's plat. They argue that "an assessor's plat sets property boundaries after it is filed and recorded," and irrespective of any historical deeds, "after the plat was recorded, the Knotts' predecessors in title owned only a rectangular-shaped parcel." They explain that "unfortunately in 1934 the relevant statute did not provide a notice period or grievance procedure, so affected property owners were stuck with whatever assessor's plat map was drawn and approved by the ordering municipal body, whether favorable or not for them." They argue the hand-drawn markings on the plat did not create an ambiguity, and the court erred by setting the boundary lines as described in the Knotts' deed and the Calumet County land records.

¶8 We conclude the circuit court appropriately granted judgment in favor of the Knotts on the boundary-line dispute. *See* WIS. STAT. § 802.08(2) (2021-22)[1] (Summary judgment is appropriate when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law.). We first agree with the court that, given the hand-drawn markings on the assessor's plat, the boundary lines as depicted on the 1934 plat are ambiguous as to these specific properties. *See **Konneker v. Romano***, 2010 WI 65, ¶26, 326 Wis. 2d 268, 785 N.W.2d 432 (We construe written instruments by looking at the four corners of the document; if the document is ambiguous, we then consider extrinsic evidence.).

¶9 As to the extrinsic evidence, the Record reflects that the 1934 assessor's plat was disregarded as to the properties at issue in this case. As the

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

parties stipulated, "[s]ince the Assessor's Plat was recorded, none of the deeds for the YGR property, Kees property, and the Knott property have utilized the property boundaries detailed in the Assessor's Plat." Instead, as the parties stipulated, the L-shape "match[es] the boundaries described in the Knott deed, as well as the chain of deeds for the YGR property, Kees property, and Knott property." As the parties further stipulated, the boundaries also match Calumet County's land records, and the Knotts have been assessed and have paid taxes based on the L-shaped property. These factual stipulations indicate that the boundary lines of the Knotts' property follow the L-shape as indicated by the circuit court. *See Northrop v. Opperman*, 2011 WI 5, ¶42, 331 Wis. 2d 287, 795 N.W.2d 719 (In boundary-line disputes, the "court first determines whether the boundary line can be determined from the deed and original monuments or markers."). We affirm the portion of the court's judgment relative to the boundary-line dispute.

¶10　We now turn to the easement dispute. The parties stipulated that YGR's and the Knotts' properties are improved with commercial buildings that are connected by a stairwell. The stairwell is within the footprint and structure of YGR's building. The stairwell is primarily used for ingress/egress access to second-floor apartments of the Knotts' building; however, the stairwell can also be used to access YGR's building roof from a window at the top of the stairwell. The stairwell is accessed through a door into the Knotts' building as well as an exterior door that exits to the street. YGR's deed contains a stairway use and access easement originally reserved in 1895. The relevant part of the easement states:

> Reserving the right to use the stairway of the building now erected upon the aforesaid premises or which may be erected upon said premises (for the use and convenience of the adjoining building) said stairway to be kept in repair by

the parties of the first part; their heirs or assigns, for long as they shall use said stairway for the purpose aforesaid.

And also reserve the right to use the North wall of the aforesaid described building in the construction of an adjoining building and the parties of the first part further agree and convey to the party of the second part the right to use the North wall of the adjoining building in the … South in the construction of a one story brick building.

¶11 YGR asked the circuit court to make determinations relative to the easement. The court determined that "YGR and the Knotts will have equal use and shared access to the stairwell." As for maintenance, the court concluded:

The Knotts will be responsible for maintenance to the south facing door to the apartments, the parties will be equally responsible for maintenance of the exterior door that exits westward to the sidewalk on Main Street as well as the stairwell, YGR will be responsible for the maintenance of any point of ingress/egress to the roof of the YGR building.

¶12 On appeal, YGR argues the circuit court erred in its easement maintenance determination. It argues the easement language unambiguously requires the easement holders (the "parties of the first part," i.e. the Knotts) to be responsible for the maintenance of the easement. The Knotts respond that the easement language was antiquated and the court properly exercised its discretion by ordering the parties to share the maintenance expenses.

¶13 We conclude the terms of the easement unambiguously require the easement holders (the Knotts) to maintain the easement. *See Garza v. American Transmission Co.*, 2017 WI 35, ¶25, 374 Wis. 2d 555, 893 N.W.2d 1 ("If the language contained in the deed of easement is unambiguous, we look no further than the deed of easement itself."). We therefore reverse the portion of the circuit court's judgment that requires the parties to be equally responsible for maintenance of the easement. The Knotts are required to maintain the easement.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.